· Bordentown v. Wallace.

THE INHABITANTS OF THE TOWNSHIP OF BORDENTOWN
v. WILLIAM WALLACE ET AL.

1. A joint plea of the infancy of one defendant in an action on a joint
   and several bastardy bond is bad, on demurrer.
2. It is also bad in substance, as in proceedings under the Bastardy act
   the infancy of the reputed father is no defence, when he is legally
   chargeable in exoneration of the public.
3. On like bond a joint plea of duress of unlawful imprisonment of one
   defendant is bad, where the relationship, such as father, son, &c., is
   not averred in the plea.
4. Bonds not demandable by law, if given for the discharge of a public
   duty, and without unlawful compulsion, have been held good in many
   cases, as voluntary bonds.
5. Where it is charged that a voluntary bond has been given, irregu-
   larities in proceedings under the statute, are irrelevant in an action on
   the bond.

On demurrer to defendants' pleas.

This action is brought on a joint and several bond given by
the defendants to the plaintiff in the penal sum of $2500, with
the condition that if the defendants "shall pay unto the said
the Inhabitants of the township of Bordentown, or to its suc-
cessors and assigns, the sum of $2.50 each and every week, to
the overseer of the poor for the time being of the said town-
ship of Bordentown, to be applied to and for the support of
a certain female bastard child, of whom William Wallace, one
of the parties hereby bound, is the father, for and during such
period of time as the said bastard child shall or may be
chargeable to the said township, then the said obligation is to
be void, otherwise to be and remain in full force and virtue."

The declaration is in the usual form. After praying *oyer*
and setting out the bond, the defendants plead jointly six
several pleas. First, *non est factum;* second, infancy of
William Wallace; third, duress of imprisonment of William ·
Wallace; fourth, bond given before and without hearing of
two justices, and when held, before one justice of the peace
until the bond was given; fifth, bond given to comply with

order of filiation when no notice was given of such order; sixth, that no order of filiation was made by two justices of the peace, according to law.

The plaintiff joins issue on the first plea, and files a demurrer to each of the five succeeding pleas.

Argued at June Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiffs, *Hutchinson & Belden.*

For the defendants, *Gilbert & Atkinson.*

The opinion of the court was delivered Ly

SCUDDER, J. The defence of the infancy of one of the defendants contained in the joint plea of all, is informal and bad. Infancy is a personal privilege of which no one can take advantage but himself. *Voorhees* v. *Wait,* 3 *Green* 343 ; *Patterson* v. *Lippincott,* 18 *Vroom* 457.

It is also a rule of pleading that personal defences, as coverture, infancy, &c., shall be pleaded separately ; that only when the defence is in its nature joint, may several defendants join in the same plea, and that where a plea is bad in part it is bad *in toto ;* if therefore, two or more defendants join in a plea which is sufficient but for one and not for the other, the plea is bad as to both. 1 *Ch. Pl.* 565, 567. But it must not be conceded that in a proper case under our statute for the maintenance of bastard children, the father of a bastard child can escape his obligation or liability to indemnify the township, or municipal body for the support of such child, if it becomes chargeable, by a plea of infancy, however formally it may be pleaded. *Co. Litt.* 172, *d,* gives the rule of an infant's general liability as follows : "An infant may bind himself to pay for his necessary meat, drinke, apparel, necessary physicke, and such other necessaries, and likewise for his good teaching or instruction, whereby he may profit himself afterward, but if he bind himself in an obligation or other

Bordentown v. Wallace.

writing with a penalty, for the payment of any of these, that obligation shall not bind him." He adds "and generally whatsoever an infant is bound to do by law, the same shall bind him, albeit he doth it without suit at law." Lord Mansfield quotes and applies this last expression in *Zouch* v. *Parsons*, 31 *Burr.* 1794, and adds: "If an infant does a right act which he ought to do, which he was compellable to do, it shall bind him." This general principle has been used in bastardy cases to bind infants under statutes passed to protect the public against the support of bastard children that may become chargeable. *People* v. *Moores*, 4 *Denio* 518; *McCall* v. *Parker*, 13 *Metc.* 372. In this latter case, in an action on a bond, given under the statute, for appearance, &c., it was decided that the infancy of the accused is no defence either for him or his surety. Prof. Parsons, in 1 *Pars. on Cont.* 334, says that there is no principle of law that binds infants when they enter into contracts which owe their validity, and the means of their enforcement, to statutes, because in all statutes containing general words, there is an implied or virtual exception in favor of persons whose disability the common law recognizes. He proceeds to illustrate his position by referring to cases where infants have been held exempt from liability to pay calls to shares in incorporated companies, wherein it has been held that there are implied exceptions in favor of infants in statutes containing general words. But the words in our bastardy statute requiring the reputed father of a bastard child, who may in some cases be an infant, to give a bond for security, are not so general as to exempt infants from its operation. They are fairly within the words of the act and its purpose to protect the public against those who would impose the support of their illegitimate offspring on others.

*Tyler on Inf.*, ch. 9, p. 139, cites the above principle of liability in its application to bastardy cases, with approval.

This second plea is defective in form, being a joint plea of the infancy of one defendant; it is also bad in substance, as in proceedings under the Bastardy act the infancy of the repu-

ted father is no defence when he is legally chargeable in exoneration of the public.

The third plea is that the defendant William Wallace was unlawfully imprisoned, and he and the other defendants made and delivered the bond by duress of imprisonment of the said William Wallace. This is also in the same form of pleading as the former plea. A defence which is personal to one defendant is pleaded by all, as if all were equally under duress at the time of making the bond. It is said that the imprisonment was unlawful, and this is well averred, for where he is imprisoned or held under process of a court that has jurisdiction to grant such process, there is no duress, the constraint put upon him must be tortious and unlawful. The same rule is found in the civil law. "The violence which leads to the rescission of a contract should be an unjust violation, *adversus bonos mores*, and the exercise of a legal right can never be allowed as a violence of this description; therefore a debtor can have no redress against a contract which he enters into with his creditor, upon the mere pretext that he was intimidated by the threat of being arrested, or even of his being actually under arrest, when he made the contract, provided the creditor had the right to arrest him." 1 *Poth. on Obl.* 26.

But can one defendant to an action on a joint and several bond plead that his codefendant signed the bond by duress, and therefore he who is bound with him is discharged? 2 *Bac. Abr., tit. "Duress,"* (*b*), gives this statement of the law: "The duress that will avoid a deed must be done to the party himself; therefore, if A and B enter into an obligation by reason of duress done to A, B shall not avoid this obligation, though A may, because he shall not avoid it by duress to a stranger. But a son shall avoid his deed by duress to his father; so shall the father his deed by reason of duress to his son." This plea does not show the relationship, if any exist, between the parties, therefore on this demurrer they must stand as strangers to each other, and not entitled to the joint defence of duress to one of the joint and several obligors. There is

no express recital on the face of the bond that William Wallace is principal and the other defendants sureties, but it appears in the condition that he is the father of the bastard child, and it is averred in the third plea that he is the principal in the writing obligatory. Admitting that the relation of principal and sureties between the parties sufficiently appears on the face of the pleading, yet in cases depending on the rules of common law, the plea of duress, in an action on a joint and several bond, may be good for the principal, while it is not any plea as to the surety. *Huscombe* v. *Standing, Cro. Jac.* 187.

In some cases a plea of duress as to all the defendants has been used, when it has been made to appear that there was no jurisdiction in the court, or officer to demand, or receive a bond as security, and it has been held that both principal and sureties were discharged. *Thompson* v. *Lockwood,* 15 *Johns.* 256 ; *Fisher* v. *Shattuck,* 17 *Pick.* 252.

This result is undoubtedly sound in principle, for where there is no jurisdiction the bond cannot have a legal existence; it is voidable by all, and in such cases the defence is available to both the principal and the surety under the plea of *non est factum,* according to our rules of pleading. It is not therefore necessary or permissible to alter what appears to have been so long established, to give the defendants any relief to which they may be legally entitled, by giving another effect to the special plea of duress as to one defendant, which, like infancy and coverture, is a personal defence. This plea does not aver a want of jurisdiction in the court or officer to whom the bond was given, in avoidance of the bond as to all the defendants. Duress is a matter of strict defence, and is carefully treated in our courts. Bonds not demandable by law, if given for the discharge of a public duty, and without illegal compulsion, have been held good in many cases as voluntary bonds. *Sooy* ads. *State,* 9 *Vroom* 324 ; *Smillie* v. *Smith,* 5 *Stew. Eq.* 51, and notes of reporter.

It was not illegal to arrest the reputed father by warrant issued on a proper complaint, by a justice of the peace having

jurisdiction to issue such warrant. An admission of liability and bond of indemnity might be given without further proof or proceedings in the case, if there was no illegal compulsion used to obtain it. My conclusion is that this third plea of duress by imprisonment of one of the defendants is bad.

The fourth, fifth and sixth pleas relate to the forms of procedure and tend to show that they were erroneous and reviewable by *certiorari*, if the bond was intended to be one strictly within the statute, although it does not purport to have been founded on an order of filiation, (see *McCall* v. *Parker*, 13 *Metc.* 372, above cited); but if it was given on the original warrant, arrest and appearance before a single justice of the peace, as appears on the face of some of the pleadings, and a recovery is claimed on it as a voluntary bond given by the parties to indemnify the township, without suit, then the matters contained in these pleas are irrelevant and immaterial.

All of these pleas will be overruled as illegally pleaded in this action, excepting the plea of *non est factum*, in answer to which a replication has been filed.