ALBERT B. CRAFTS *vs.* PHEBE A. CARR.

WASHINGTON—AUGUST 5, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *New Trial. Extension of Time to File Testimony.*

Upon a petition for new trial, an extension of time to file evidence was granted to October 15. On October 31 the time was further extended to November 8. No written extension of time from October 15 to October 31 was on file :—

*Held*, that it would be presumed that the action of the justice in extending the time was regular and in compliance with Gen. Laws cap. 251, § 6, and that the extension from October 15 to October 31 had been lost.

(2) *New Trial. Extension of Time to File Testimony.*

The extension of time for filing evidence, under Gen. Laws cap. 251, § 6, is inclusive of the day to which the extension is granted.

(3) *Infants. Necessaries. Attorney and Client.*

Where a suit was brought by an infant plaintiff through her father as next friend, in the course of which the infant conferred with counsel and appeared as a witness, the suit resulting in favor of the plaintiff, a promise on the part of the infant to pay counsel fees will be implied.

(4) *Infants. Necessaries. Attorney and Client.*

An infant is liable for counsel fees, where the action is brought for her protection.

ASSUMPSIT. Heard on petition of defendant for new trial, and petition denied.

ROGERS, J. This is defendant's petition for a new trial, after verdict for the plaintiff, of an action of assumpsit for counsel fees for services alleged to have been rendered to the defendant, who is a minor, in bringing and successfully prose-

cuting an action at law brought by the defendant by her father and next friend, George H. Sprague, against one, Joseph H. Brown, for an alleged indecent assault upon her.

(1)      After the petition for a new trial was filed the plaintiff moved to dismiss it for the following reasons.   The defendant upon the rendition of the verdict against her duly filed notice of her intention to claim a new trial and asked for an extension of time to file statement of evidence, etc., which was granted and time was extended to October 15, 1901.   On October 31, the time was further extended to November 8, on which last-named date the statement was filed, and has been allowed by the justice presiding at the jury trial.   The plaintiff claims that inasmuch as there is no written extension of time from October 15, to October 31, on file, the petition should be dismissed as the last extension was not made "within any extension thereof," etc., as required by Gen. Laws R. I. cap. 251, § 6, p. 864. The statute provides that within five days after verdict, or within any extension thereof from time to time on motion therefor, the justice may extend the time for filing statements to such time as he may prescribe.   With such discretion in the justice it is to be presumed that his action was regular, and that the extension from October 15 to October 31 has been lost. That a clerical error was committed by the defendant's attorney in dates is apparent, for he heads his original motion for time extension, thus, "Adjourned June Session A. D. *1891*," instead of *1901*, and asks that the time be extended to October 15, 1891, instead of *1901*, the name of the county and the name of parties and the name of court being correctly given.   The justice in extending the time gives the date of his action as July 10, 1901, the very date of the rendition of the verdict, and extends the time to October 15, 1901, so the clerical error is of no

(2) practical account.   The plaintiff also claims that filing the statement *on* November 8, 1901, is not a compliance with the extension *to* November 8, 1901.   The invariable practice since the enactment of the judiciary act in 1893 by successive judges has been to construe the extension as inclusive of the day to which the extension was granted and to allow statements so

filed when correct, and the presiding justice *has allowed* the statement in this case. The construction so adopted and followed has become too securely established, in our opinion, to be now successfully attacked.

For the reasons given the plaintiff's motion to dismiss the petition for a new trial is overruled.

The defendant petitions for a new trial on the ground that the trial justice erred in his rulings upon questions of law raised at the trial and that said justice declined to rule and charge the jury as requested by the petitioner and ruled against her requests. The defendant's requests which the justice refused to give and to which refusal the defendant excepted are as follows, viz.:

" 1. The declaration sets out no cause of action against the defendant, an infant under the age of twenty-one years.

" 2. The testimony discloses no cause of action against the infant defendant, the services rendered not being necessaries as a matter of law, and the defendant never having ratified the claim after arriving at her majority.

" 3. If the defendant was an infant under the age of twenty-one years, the father could not bind her estate by any contract with the plaintiff for professional services."

We think the first request was properly denied. In the Second Judicial District Court where the action was originally brought, the defendant was described as an infant, and her guardian was duly served with process as required by statute. The defendant demurred because the declaration did not set out that the services rendered by the plaintiff as an attorney were necessaries. The case was tried both on its merits on the general issue and on the demurrer, evidence being put in as to necessaries, and while the District Court was holding it for advisement the plaintiff filed an amended declaration with the averment inserted, for the lack of which the defendant had demurred. Subsequently the district judge rendered a long decision in favor of the plaintiff deciding that the services were necessaries. Thereupon the defendant asked for a jury trial and the case was certified to the Common Pleas Division, where the defendant again demurred for the same reason as

before, with the added ground that the declaration did not set out that the defendant had ratified the contract since attaining majority. The demurrer was overruled and the case was tried to the jury, on the questions whether the defendant had made a promise, and whether the services rendered were necessaries that the defendant under the circumstances of the case was liable for, there being no pretence on the plaintiff's part that the defendant had ratified any promise made by her after attaining her majority.

We think the declaration set out a cause of action against the defendant, an infant under twenty-one years, and the trial showed that the defendant's counsel fully understood and appreciated the cause set forth.

(3) The next question raised is whether the plaintiff's services were necessaries. The services rendered by the plaintiff were as follows : " The defendant in the summer of 1898 was seventeen years old and unmarried. In August of that year her father, George H. Sprague, went to the plaintiff's office in Westerly and told him of an indecent assault upon her by one, Joseph H. Brown, and wanted a suit brought in order to protect her and others from similar assaults. The result of the consultation was that the plaintiff brought action against said Brown in the name of the defendant by her father as her next friend, and after trial thereof the jury rendered a verdict in favor of the infant (being the defendant in the case at bar) for $600, which verdict was sustained on a petition for a new trial, and judgment was entered on the verdict in June 1899. Mr. Allen, who is counsel for the defendant in the case at bar, was counsel for the said Brown in the damage suit against him. When the plaintiff in the case at bar visited the clerk's office of the Common Pleas Division with reference to getting out an execution in the damage suit against Brown he found a paper filed June 13, 1899, signed by said Brown and by Phebe A. Carr (for Miss Sprague had been married then) to the effect that the case had been settled ; but said paper was not signed by her father, George H. Sprague, her next friend, nor had any guardian then been appointed. Notwithstanding this peculiar settlement execution was ordered to issue. The plaintiff in the

case at bar, as shown by the statement of evidence, swore as follows, viz.: " I went to see her" (the present defendant) " and she was sick.     I asked her if she had made that settlement and she didn't answer at first but finally admitted that on June 13th she was sent for by Mr. Allen to come to a neighbor's there and she went without the knowledge of her father or mother and they settled it up taking a $400 note.     At this time she told me she didn't want to settle it and wanted me to look out for her."

The full judgment amounting to $663 was finally collected, but not without efforts made in court by said Brown to enforce the settlement.     After the execution was collected, the amount was paid to the defendant's guardian who had then been appointed.

It is urged for the defendant that the plaintiff's claim for services is properly one against George H. Sprague, and not against her.

The situation was this.     A girl of seventeen having no estate and no guardian was the victim of an indecent assault. She had a father and mother, and her father, her natural guardian, so to speak, at once took steps for his daughter's protection and for compensation for her sufferings, and incidentally for the punishment of her assailant.     Her father was naturally her next friend, and legally became such to enable a suit to be brought, as she, being a minor, could not, except under very extraordinary circumstances, bring it without the aid of a next friend to manage it, which the law presumes, from the disability of her infancy, she is unable properly to manage herself ; the next friend being liable to the defendant for costs of suit in case the infant fails in the action.     *Bliven* v. *Wheeler*, 23 R. I. 379.     If the infant recovers, her estate would be enriched, and as she would then have an estate she would then require a guardian to whom the amount recovered would be paid.

If the suit against Brown was a legally proper one for the next friend to have aided the infant to bring, and the expense of counsel engaged therein was what is technically termed in law " *necessaries*," then the infant defendant would be liable

for such necessaries. It has been urged that the infant, *in propria persona*, did not promise the plaintiff in the case at bar to pay him for services, nor did she actually engage him. The father's duty as next friend was to exercise his mature judgment in the management of the action which the immature judgment of the infant, the law presumed, was not equal to ; and the very first occasion for the exercise of such judgment was in the employment of capable counsel. The daughter knew of the bringing of the suit and profited by its successful prosecution. She must have conferred with counsel and appeared as a witness, and she certainly attempted to settle such action in a manner highly injurious to her own interests. An implied promise for necessaries is sufficient, *Gay* v. *Ballou,* 4 Wend. 403, and in the case at bar the circumstances, we think, are sufficient to imply a promise on the part of the infant defendant.

(4)     The next question to be considered is—Was the service rendered by the plaintiff as an attorney at law, legal *necessaries* for the minor ?

In 5 Bacon's Abridg. (Edited by Bouvier) 118, it is stated that where infants "contract for necessaries they are absolutely bound ; and this likewise is in benignity to infants, for if they were not allowed to bind themselves for necessaries, no person would trust them, in which case they would be in worse circumstances than persons of full age. Therefore it is clearly agreed by all the books that speak of this matter, that an infant may bind himself to pay for his necessary meat, drink, apparel, physic, and such other necessaries ; and likewise for his good teaching and instruction, whereby he may profit himself afterwards."

Bouvier, in his Law Dictionary, Vol. 2, 476, says : "The term necessaries is not confined merely to what is requisite barely to support life, but includes many of the conveniences of refined society. It is a relative term, which must be applied to the circumstances and conditions of the parties." Dicey, in his work on Parties, 285, says : " The word necessaries, as applied to an infant, extends beyond the sense which is given it in ordinary conversation. It not only includes such articles as

are necessary to the support of life, but extends to articles fit to maintain the particular person in the station and degree of life in which he is placed. The term necessaries is, in other words, purely relative to the infant's position in life. . . . From the relative character of the term, combined with the tendency of juries to find an infant, if it be possible, liable on contracts of which he has received the benefit, has arisen a considerable variety in the decisions on the question as to what things are and what are not necessaries." As said by the Supreme Court of Nebraska in *Englebert* v. *Troxell*, 40 Neb. 195, 204, "As to what are necessaries for an infant, cannot be defined by any general rule applicable to all cases; it is a mixed question of law and fact to be determined in each case from the particular facts, circumstances, and surroundings in that case."

There are numerous cases to be found in the books deciding that an infant is not liable to an attorney for services rendered, though these are in most part for services rendered as to the infant's property. Then there are cases where infants have been held liable for counsel fees as necessaries, even when the services related to the infant's property, if beneficial to the infant's estate. *Epperson* v. *Nugent,* 57 Miss. 45 ; *Searcy* v. *Hunter*, 81 Tex. 644 ; *Thrall* v. *Wright*, 38 Vt. 494. There is a class of cases allowing counsel fees as necessaries for an infant, where the cases in which the services were rendered affected the infant's personal relief, protection, or liberty, which, it seems to us, more closely analogize the case at bar, than those relating merely to property rights.

*Munson* v. *Washband et al.*, 31 Conn. 303, was a case where a female infant was seduced and got with child, under a promise of marriage. The seducer afterwards refused to marry her, and she was left in a state of destitution and suffering, her father having turned her out of doors. Thereupon she applied to an attorney to bring suit for her for the breach of the promise of marriage. He did so, and it was afterwards settled by the marriage of the parties. After the marriage the attorney sued the husband and wife for his services. The decision was that, if the services were necessary for the personal relief,

protection and support of the female defendant, the action might be maintained, and the court refused to disturb the jury's verdict for the plaintiff. The court through Hinman, C. J., p. 307, says: "The law being founded in reason admits of exceptions. Now one of the principal reasons why an infant is not allowed to make contracts is to protect him from improvident bargains resulting from his inexperience, and the same reason causes the exception, where he is allowed to contract for necessaries, since it can never be for his benefit to be unable to contract for food, shelter, etc., if he has no funds or other means of being provided for ; and situated as this infant was, abandoned by her natural protector, and having become an outcast, but still having valid claims which, if enforced, would rescue her from this condition, it appears to us that it was obviously for her benefit that she should be enabled to employ counsel to enforce them. It was not the case of merely prosecuting an infant's right to property, or for the recovery of an ordinary debt. In such cases there is or ought to be a guardian to protect the infant's rights. There was none here, and it does not appear that there were any practicable means of procuring one to be appointed. No one would incur liabilities on her account, unless he could rely upon her agreement to indemnify him out of the damages she might recover in the suits to be commenced. It appears to us, therefore, that while the court recognized the rule that the ordinary fees of an attorner for the prosecution of an infant's rights to property could not generally be said to be necessaries, it yet further correctly informed them, in substance, that such services, where requisite for the personal relief, protection and support of the infant, might lawfully be contracted for by the infant, and that he would be bound in law to pay for them. It appears to us that this is a very reasonable rule, which will operate for the benefit of minors, and therefore comes within the principle on which they are allowed in certain cases to make contracts, and in others are not authorized to do so. We think there may be cases, and the jury have found this to be one of them, where a civil suit may, under extraordinary circumstances, be the only means by which an infant can procure the absolute neces-

saries which he requires, and where such is the case, it would be a reproach to the law to deny him the power of making the necessary contracts for its commencement and prosecution."

In *Barker* v. *Hibbard*, 54 N. H. 539, the plaintiff sued an emancipated infant for services rendered him as attorney in defending him in a bastardy proceeding. The court said, *inter alia:* "We think it must be held that an infant is liable for the services of his attorney in defending him against a bastardy proceeding. This may, it is true, sometimes subject him to larger liabilities than he would incur by making no defence and procuring his liberty by applying for a discharge from imprisonment after he had been found chargeable ; but it is to be presumed that he is innocent until he is proved to be guilty. A bastardy proceeding, though held to be a civil action, can only be sustained upon the ground that the defendant has committed a criminal offence. His good name is at stake as well as his property, if he has any or ever acquires any,—for a judgment rendered against him will be valid, whether he is or is not liable to pay his attorney ; and, besides, if he is found chargeable, the court may not release him upon satisfactory evidence of his inability to comply with the order. If an infant has property, the law provides for the appointment of a guardian to hold and manage it. If he has property and is without a guardian, it is very easy to procure one to be appointed. There can rarely be occasion for an infant to employ an attorney in suits relating to his property ; but if he has no property, the law does not contemplate that he shall have a guardian ; and if one should be appointed in such a case, it would be unreasonable to expect him to employ at his own expense an attorney for his ward. If an infant has no authority to pledge his credit to an attorney when arraigned as the putative father of a bastard child, he may sometimes be prevented from getting bail, or from making a successful defence. We are of the opinion that the consequences of holding that he has such authority are much more likely to be beneficial than prejudicial to his interests. He will only be liable for services and expenses which it was reasonable to render and incur. That his own directions were followed, unless there was reasonable

cause to believe it was for his interest to follow them, will be immaterial. Any express promise he may make to pay exorbitant fees to his attorney will be void. He will only be liable upon an implied promise to pay a reasonable sum. Charges incurred in making or attempting to make a defence, which there was no good reason to believe it was for the interest of the infant to make, will not be recoverable."

In *Askey* v. *Williams*, 74 Tex. 294, the question was as to the liability of an infant to an attorney for services rendered the infant at his request in defending him when indicted for stealing cattle. The court said : " The contracts of an infant for necessaries are neither void nor voidable, and we are of opinion that the services of an attorney should be held necessary to an infant when he is charged by an indictment with crime. His life or his liberty and reputation are at stake and it would be unreasonable to deny him the power to secure the means of defending himself. He may contract for food and raiment suitable to his condition in life, though they be such as are not demanded by his absolute wants, and it is not to be questioned that the immunity from punishment and disgrace is a matter of far more importance to his welfare. It has accordingly been held that reasonable attorney fees in defence of a criminal action brought against an infant are necessaries."

Following the analogy of the last three cases cited, which commend themselves to us, we think that in the case at bar, the action of the defendant against her assailant, Brown, was brought for her protection, even if the result of it, after paying the plaintiff's counsel fees, will increase her estate. We are of the opinion that the counsel fees sued for in this case were legal necessaries.

The third request of the defendant which the presiding justice denied, viz.: " If the defendant was an infant under the age of twenty-one years, the father could not bind her estate by any contract with the plaintiff for professional services—," might be correct as an abstract proposition of law disconnected from the circumstances of this case, but with its connections, we think it was properly denied. The father's employment of

the plaintiff as counsel in the action against Brown was simply for his infant daughter while he was acting as her *prochein ami*, and in connection with the conduct of his daughter was not the father's promise, but the implied promise of the infant daughter.

We find no errors in the rulings of the presiding justice at the jury trial of which the defendant can complain, for the defendant's fourth request to charge was granted, and that, in our opinion, without further explanation, was too favorable to the defendant. That request was as follows: "Nothing to the contrary appearing it is presumed that the father provided the defendant with all necessaries and she cannot bind herself for necessaries." It is a general rule that a father (at least of sufficient ability, *Pearce, Trustee,* v. *Olney,* 5 R. I. 269,) is bound to supply an un-emancipated infant with food, raiment, etc.—the ordinary necessaries,—yet he is not bound, in our opinion, to supply counsel fees out of his own purse for the infant in a case like that against Brown, and the evidence showed that the plaintiff trusted the infant and not the father. The principle upon which the father of an infant is obliged to provide the ordinary necessaries, is that he is entitled to the infant's wages until he voluntarily emancipates her during her infancy, or the law emancipates her upon attaining her majority. The action against Brown was brought by the infant for the suffering he inflicted upon her and for her protection against him in the future. It was not brought by the father for the loss of the infant's services and it could not have been brought by him for her suffering, hence the amount recovered went not to him but to the infant, and has been paid to the infant's guardian. It seems to us clear from analogy that just as an emancipated infant can bind herself for necessaries of all kinds when released from her father's claim upon her for the consideration she is liable to him for the necessaries furnished by him, so she can bind herself for necessaries such as the one under consideration, for which, the father not being bound to provide for her he technically gets no benefit from. It certainly does not seem just that a father, of slender means perhaps, should be obliged to pay counsel for services which technically he gets

no pecuniary benefit from and the infant's estate gets all the pecuniary benefit of.

In *Munson* v. *Washband, supra*, the infant's father turned her out of doors, while in this case the infant's father lent all the aid in his power, but in the former case the court required the counsel's services to be paid, and we see no reason why in this case counsel is not equally entitled to pay for his services. Whether, however, the fourth charge was too favorable for the defendant or not, is of no consequence, as it did not injure the defendant.

The defendant's conditional exception contained in her counsel's words—"If your honor has charged that the jury is to decide whether these services were necessary or not, then I wish to take an exception—" if formally correct and allowed, can avail the defendant nothing. There are authorities both ways, viz.,—that the question of necessaries is for the court, and also that it is a question for the jury. Inasmuch as the jury have found that the plaintiff's services were *necessaries*, if it was a question for them, and inasmuch as, if it was a question for the court, the court would have had to have ruled that said services were necessaries in this case, the defendant has no ground to be aggrieved.

For the reasons hereinbefore given, the defendant's petition for a new trial is denied, and the case is remitted to the Common Pleas Division with direction to enter judgment upon the verdict.

*A. B. Crafts*, for plaintiff.

*S. W. K. Allen*, for defendant.