## GRISSOM *et al.* v. BEIDLEMAN *et al.*

No. 3283.   Opinion Filed December 31, 1912.

(129 Pac. 853.)

1.   INFANTS—Actions to Protect Real Estate—Services of Attorney —"Necessaries." Where suit was brought in the name of a minor, who was under the age of eighteen years, by direction of her next friend, to protect the infant's title to certain real estate, held, that counsel could not recover in an action at law against the minor for services in such suit.

      (a)   Such services are not regarded as necessaries, and may be avoided by the infant, even under express promise.

2.   SAME—Disaffirmance of Contract. The disaffirmance of a contract made by an infant nullifies it, and renders it void ab initio; and the parties are returned to the same condition as if the contract had never been made.

      (a)   After the infant has disaffirmed the contract, any one may take advantage of such disaffirmance.

3.   SAME—Avoidance of Contract. An infant may avoid his act or contract by different means, according to the nature of the act and the circumstances of the case.

      (a)   Any act showing unequivocally a renunciation of, or a disposition not to abide by the contract made during minority is sufficient to avoid it.

4.    **APPEAL AND ERROR**—Sufficiency of Petition—Errors Apparent of Record. Upon a petition in error to reverse a judgment by default, such defects in the petition as could have been taken advantage of under general demurrer may be brought under review; and, if the allegations of the petition are insufficient to sustain the judgment, the same will be reversed.

(a)    Where an error is apparent on the judgment roll or record of the trial court, the same will be considered on review here, although no exception was taken thereto.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Action by George C. Beidleman and others against Joseph M. Grissom and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with instructions.

*George James,* for plaintiff in error Grissom.

*A. S. McRea,* for plaintiff in error Green.

*Merwine & Newhouse* and *George C. Beidleman,* for defendants in error.

WILLIAMS, J.    The only question to be determined in this proceeding is whether the contract entered into, on which the action was based, to wit, that between Leah Gresham, a minor, under eighteen years of age, by Vassie Gresham, as next friend, and George C. Beidleman, an attorney, in which the latter was employed as attorney to prosecute an action in her name by said next friend to recover her interest in certain lands, was voidable.

"A minor cannot give a delegation of power, nor under the age of eighteen, make a contract relating to real property, or any interest therein, or relating to any personal property not in his immediate possession or control." (Section 5035, Comp. Laws 1909; section 3912, Wilson's Rev. & Ann. St. 1903.)

A minor may make any other contract, with certain exceptions; the exception including section 5035, *supra,* subject only to his power of disaffirmance, and subject to the provisions of the law on marriage and on master and servant. Section 5036, Comp. Laws 1909; section 3913, Wilson's Rev. & Ann. St. 1903.

"A minor cannot disaffirm a contract, otherwise valid, to pay the reasonable value of things necessary for his support, or that of his family, entered into by him when not under the care of a parent or guardian able to provide for him or them."   (Section 5038, Comp. Laws 1909; section 3915, Wilson's Rev. & Ann. St. 1903.)

"A minor cannot disaffirm an obligation, otherwise valid, entered into by him under the express authority or direction of a statute."   (Section 5039, Comp. Laws 1909; section 3916, Wilson's Rev. & Ann. St. 1903.)

In all cases other than those specified in said sections 3915 and 3916, Wilson's Rev. & Ann. St. 1903 (sections 5038 and 5039, Comp. Laws 1909), the contract of a minor, made by him whilst he is under the age of eighteen, may be disaffirmed by the minor himself, either before his majority or within one year's time afterwards, or in case of his death, by his heirs or personal representative; and if the contract be made by the minor while he is over the age of eighteen years, it may be disaffirmed in law only upon restoring the consideration to the party from whom it was received, or paying its equivalent, with interest.   Section 5037, Comp. Laws 1909; section 3914, Wilson's Rev. & Ann. St. 1903. See *Crafts v. Carr,* 24 R. I. 397, 53 Atl. 275, 60 L. R. A. 128, 96 Am. St. Rep. 721; *Hall v. Butterfield,* 59 N. H. 354, 47 Am. Rep. 209; *International Land Co. v. Marshall,* 22 Okla. 693, 98 Pac. 951, 19 L. R. A. (N. S.) 1056.

The English law, from the earliest period, has thrown the mantle of protection around the minor or infant on account of his ignorance and inexperience. *International Land Co. v. Marshall, supra.* The federal government, in exercising its guardianship over the Indians as its wards, carrying out this same policy, has put certain limitations upon this state as to the lands of said wards. *Jefferson v. Winkler,* 26 Okla. 653, 110 Pac. 755; *Bell v. Cook* (C. C.) 192 Fed. 597; *Truskett et al. v. Closser* (C. C. A.) 198 Fed. 835.

In *N. H. Mutual Fire Ins. Co. v. Noyes,* 32 N. H. 345, it is said:

"In *Phelps v. Worcester,* 11 N. H. 51, it was holden that the services and expenses of counsel, in carrying on a suit to protect the infant's title to his estate, could not be regarded as neces-

saries, and that the infant's liability for them might be avoided, even under an express promise to pay for them. Upham, J., in pronouncing the opinion of the court, remarked: "The inquiry has been made, if there had been no guardian, and the infant were without aid, whether he might not employ others to protect his rights to his property, and be legally holden, notwithstanding the interposition of his minority. We think clearly not. Though such services may promote the sound interests of the ward (infant?), they are not such assistance as comes within the term "necessaries." Lord Coke considers the necessaries of the infant to include victuals, clothing, medical aid, and good teaching or instruction whereby he may profit himself afterwards. Coke Lit. 172a. Such aid concerns the person and not the estate, and we know of no authority which goes beyond this.' ' Now, if the services and expenses of counsel, in protecting the property of an infant, are not necessaries, on what principle can it be contended that the insurance of that property against loss by fire can be? The object is the same in both cases—the protection and security of the infant's property—and instances can readily be conceived where the services of learned and experienced counsel might be quite as valuable and important as any contract of insurance. The test of beneficiality, then, cannot be relied on as determining whether or not a thing is to be reckoned among necessaries. But it seems to us the suggestion in the case last cited, that necessaries concern the person and not the estate, furnishes the true test on this subject. Although there may be isolated cases where a contrary doctrine has obtained, we apprehend the true rule to be that those things, and those only, are properly to be deemed necessaries which pertain to the becoming and suitable maintenance, support, clothing, health, education, and appearance of the infant, according to his condition and rank in life, the employment or pursuit in which he is engaged, and the circumstances under which he may be placed as to profession or position. Coke Lit. 172a; *Whittingham v. Hill,* Cro. Jac. 494; *Ive v. Chester,* Cro. Jac. 560. If this be so, then matters which pertain only to the preservation, protection, or security of the infant's property are excluded from the list of necessaries, however beneficial. Whatever relates to his property is the legitimate business of a guardian, and, if transacted by the infant, may be avoided at his election."

In *Barker v. Hibbard,* 54 N. H. 539, 20 Am. Rep. 160, this holding is adhered to, but counsel fee for defending the minor in

a bastardy proceeding is classed as "a necessary"; the action concerning his person and liberty.

In *Thrall v. Wright,* 38 Vt. (Book 12, Ann. Ed. 188) 494, it is said:

"The defendant was a minor, had a note against his father, and employed the plaintiff, an attorney, to bring a suit on it against his father. The suit was afterwards discontinued. The boy told the attorney, when he applied to him to bring the suit, that he did not reside with his father, and that his father had given him his time. The father was a man of property, willing and able to support his son, and desired that he should remain at home. This suit is brought by the attorney to recover of the minor for his services and disbursements in the suit. The minor pleads infancy. The court below found that the suit was not necessary to protect the son's interest in the note, not beneficial to the minor, and not proper and expedient under the circumstances. (1) The plaintiff insists that in this finding there was error, and that, upon the facts disclosed in the case, the suit was necessary. Why? Not because the evidence did not tend to prove the fact that the suit was unnecessary, nor because the court exceeded their duty in finding the fact from the evidence, for the trial was by the court. If there was error in this finding, it must be because, as matter of law, in all cases where a father is indebted to his minor son, a lawsuit with the father is a necessary for the son. We are not prepared to establish such a rule. Prof. Parsons, in his work on Contracts, p. 246, enumerates in his list of articles not necessaries for an infant: 'Horses, saddles, bridles, liquors, pistols, powder, whips, and fiddles, balls and serenades, counsel fees, and expenses of a lawsuit'—citing *Phelps v. Worcester,* 11 N. H. 51. But the circumstances of each case must govern. Thus, a horse might be necessary if the infant's health required him to ride. So a lawsuit might be necessary."

In *McIsaac v. Adams,* 190 Mass. 117, 76 N. E. 654, 112 Am. St. Rep. 321, 5 Ann. Cas. 729, it is said:

"In the aspect of the case most favorable to the plaintiff, he has no standing, unless the services were necessaries. The plaintiff's testimony was the only evidence introduced at the trial; and we are of the opinion that there is nothing in it which warrants the finding in his favor. The services were rendered in connection with the settlement of an estate, in which the defendant's only interest was as legatee who would receive a not very large sum if the will should be allowed, or as a descendant of his

grandfather, who would take as an heir at law if the will should be set aside. Protection of such an interest of a minor does not come within the term 'necessaries,' as used in reference to the liability of minors. Ordinary rights of property are to be protected by a guardian, and not left to the care of the minor himself, or to the irresponsible action of third persons. * * * When proceedings affecting the minor as a party are going on in a court, a guardian *ad litem* is appointed. * * * A judgment against a minor, without a probate guardian or a guardian *ad litem* to represent him, is voidable upon a writ of error. *Johnson v. Waterhouse,* 152 Mass. 585, 26 N. E. 234 [11 L. R. A. 440, 23 Am. St. Rep. 858]. We can conceive of conditions such that a minor may be bound to pay a reasonable compensation for the services of an attorney, on the ground that they were necessary; but ordinarily this liability is limited to cases where the services are rendered in connection with the minor's personal relief, protection, or liberty. The cases of *Crafts v. Carr,* 24 R. I. 397, 53 Atl. 275 [60 L. R. A. 129, 96 Am. St. Rep. 721], *Barker v. Hibbard,* 54 N. H. 539 [20 Am. Rep. 160], *Munson v. Washband,* 31 Conn. 303 [83 Am. Dec. 151], and *Askey v. Williams,* 74 Tex. 294, 11 S. W. 1101 [5 L. R. A. 176], are illustrations of the application of this rule. In the first, the services were rendered in an action, brought by the next friend of a female minor, to recover for an indecent assault upon her. In the second, the plaintiff had been employed to defend the defendant upon the charge of being the father of a bastard. In the third, the defendant had been seduced, and afterwards had been turned out of doors by her father, and the plaintiff had brought an action for the defendant against the seducer. In the fourth, the services were rendered in defending a minor upon an indictment for stealing. The cases recognize the general doctrine that legal services, rendered to a minor in regard to ordinary rights of property, are not necessaries. See, also, as to this last proposition *Phelps v. Worcester,* 11 N. H. 51; *Thrall v. Wright,* 38 Vt. 494; *Conant v. Burnham,* 133 Mass. 503 [43 Am. Rep. 532]; *Tupper v. Cadwell,* 12 Metc. (Mass.) 559, 562 [46 Am. Dec. 704]. With the protection which the law gives minors in regard to their property, through its provisions for the appointment of guardians, it cannot be held that services of an attorney, without employment by a guardian, are necessary to a minor, in the settlement of the estate of a deceased person, in which he is interested."

There are other cases reported deciding that an infant is not liable in an action at law for legal services rendered relative to

his estate or property. *Dillon v. Bowles,* 77 Mo. 603; *Englebert v. Troxell,* 40 Neb. 195, 58 N. W. 852, 26 L. R. A. 177, 42 Am. St. Rep. 665; *Cobbey v. Buchanan,* 48 Neb. 391, 67 N. W. 176; *Houck v. Bridwell,* 28 Mo. App. 644.

In *Hanlon et al. v. Wheeler* (Tex. Civ. App.) 45 S. W. 821, it was held:

"Under a law which authorizes a minor to contract for necessaries, he may engage an attorney to prosecute an action for a personal injury."

In Tennessee, in a damage suit for personal injuries, attorneys are entitled to a reasonable fee and to have a lien on judgment (*Smithson et al., Ex parte,* 108 Tenn. 442, 67 S. W. 864); but the amount was not entitled to be determined on *ex parte* hearing. A hearing at which the infant shall be represented by a guardian or guardian *ad litem* is essential.

In *People ex relatione Smith v. Mullin, Commissioner,* 25 Wend. (N. Y.) 698, the relator, imprisoned on execution for assault and battery, sought his discharge on compliance with the provisions of the statute relative to voluntary assignments by a debtor imprisoned in civil cases. It was held that he was entitled to a discharge, having complied with the provisions of said statute, and that such assignment was valid, notwithstanding his under age.

The undertaking of an infant, by bond or contract, to answer charge of bastardy, or to support his bastard child, may not be disaffirmed. *McCall v. Parker,* 13 Metc. (Mass.) 372, 46 Am. Dec. 735; *Stowers v. Hollis,* 83 Ky. 544; *People v. Moores,* 4 Denio (N. Y.) 518, 47 Am. Dec. 272; *Gavin v. Burton,* 8 Ind. 70; *Inhabitants of Township of Bordentown v. Wallace et al.,* 50 N. J. Law, 13, 11 Atl. 267. An infant having given security for the fine and costs to prevent being held in custody, and his surety having paid the same, on motion, judgment being rendered against the minor, it was held that the judgment, though arising out of a civil contract, was binding on the infant, and could not be disaffirmed. *Dial v. Wood,* 9 Baxt. (Tenn.) 296. An infant is bound on his recognizance or bail bond, not subject to be disaffirmed, for his personal appearance at court. *State v. Weather-*

*wax*, 12 Kan. 463; *Commonwealth v. Semmes*, 38 Va. 665; *Attorney General v. Baker*, 9 Rich. Eq. (S. C.) 521; *Fagin v. Goggin*, 12 R. I. 398. A husband, though an infant, was held liable for the debts of his wife contracted before marriage. *Butler v. Breck*, 7 Metc. (Mass.) 164, 39 Am. Dec. 768; *Roach v. Quick et ux.*, 9 Wend. (N. Y.) 237. An infant widow was held to be liable on a contract by her for her deceased husband's funeral expenses. *Chappel v. Cooper*, 13 M. & W. 252, 13 L. Jour. 286.

In *Helps v. Clayton*, 112 Eng. Com. Law Rep. 553, (17 C. B. [N. S.] 553), it is said:

"The employment of the lady's solicitor to prepare the settlement is not a mere compliment or matter of patronage; it has also the substantial object of satisfying the lady's friends that all proper care has been exercised on her behalf by some person in whom they confide, and of giving a remedy for negligence by action against the solicitor. He does not the less act as the solicitor of the lady or her parent, because the intended husband is to be ultimately liable, in the event of the marriage taking place. The proper conclusion, therefore, is that the retainer is to be considered as that of the lady or her parent, as the case may be; but that usage makes the husband liable to indemnify whosoever, on the part of the wife, has properly incurred expense by retaining the solicitor to prepare a settlement in the propriety of which the latter has so large an interest. * * * Upon the remaining question—that of infancy—we have already stated our opinion. The principal contract of marriage was one which it was competent for an infant to enter upon. She had no property to settle, and would have had no certain provision without the settlement; and the preparation of the settlement was therefore beneficial, as securing to her, at her election, a proper division, which may justly be considered a necessity suitable to her estate and condition. It would be a perversion of the law, for the protection of infants, to hold that, under these circumstances, an infant could not contract for the preparation of such a settlement."

These cases are within the principle that, when a contract comes within the term "necessaries," or that which he is under a legal obligation to do, or is made pursuant to statutory authority, the minor is bound so that he may not disaffirm same. In the case of the infant female, the solicitor's bill for drawing a marriage settlement was reasonably incidental to her contracting marriage. An infant may contract marriage and do everything that

is reasonably incidental and beneficial to her in carrying out or consummating the marriage contract.

In *Epperson v. Nugent*, 57 Miss. 45, 34 Am. Rep. 435, the action of the chancery court in allowing, out of the ward's estate, counsel fees earned by the guardian for services for the ward in recovering property then being administered by the chancery court, such services being performed before his appointment as guardian, was under consideration. Under the Mississippi Code (Code 1871, sec. 976), which controlled that case, the chancery court had jurisdiction of the minor's business and all demands against his estate. This case is in harmony with the principle announced by this court in *Muskogee Development Co. v. Green et al.*, 22 Okla. 237, 97 Pac. 619, wherein it is held that an allotment of an infant without a legal guardian, living with his father, who is his natural guardian, having been leased by said natural guardian at the rate of 25 cents per acre per year for a period of five years, and for certain improvements to be made thereon, to consist of breaking land and building fences and houses, which benefited such estate, said contract having been entered into in good faith by all parties thereto (it being a fair contract), and believing it to be authorized under the law, said father afterwards having been appointed as legal guardian, repudiating said contract, the value of such improvements were allowed out of the rents in an accounting in equity; such improvements adding a value to the land in excess of their cost. This holding was in line with *MacGreal v. Taylor*, 167 U. S. 688, 17 Sup. Ct. 961, 42 L. Ed. 326.

In *Senseney, Trustee, v. Repp et al.*, 94 Md. 77, 50 Atl. 416, a bill in equity for partition was filed by the next friend of several infants. The solicitor who filed the bill and prosecuted the partition proceedings to final decree was allowed a fee out of the proceeds of the sale. In the opinion it is said:

" * * * He is seeking remuneration out of a fund which his services have produced, and produced for the benefit of the persons whose interests he in reality represented. His services were rendered for the benefit of the infants. Being infants, they were unable to contract with him. But the fund which those services realized was in court, and, after the debts due by the de-

cedent had been paid, belonged to the widow and infants. It was entirely proper that out of what belonged to them the fee should be paid. * * *"

In *Colgate v. Colgate,* 23 N. J. Eq. 372, it was announced that a court of equity may direct the guardian *ad litem* to employ counsel, approved by the court, to represent the infant, and that compensation may be fixed by the chancery court and ordered paid out of the infant's estate.

In *Connor v. Ashley,* 57 S. C. 305, 35 S. E. 546, it was held that a solicitor for a minor, in a bill in equity, was entitled to a fee of compensation for his services, to be allowed under fees brought into court by proper decree, under the power of equity in its control of minors' estates.

In *Owens et al. v. Gunther,* 75 Ark. 37, 86 S. W. 851, 5 Ann. Cas. 130, it was held that where, in a suit in chancery involving the real property of infants, the chancellor, on account of the fact that the statutory guardian of the infants claims an adverse interest in the property, refuses to allow him to defend for the infants and appoints a guardian *ad litem* for that purpose, who employs attorneys to represent him, and the latter conduct the litigation for the infants to a successful conclusion, the infants are liable for reasonable attorney's fees; but the amount cannot be made a lien on their property. See, also, *Petrie v. Williams et al.,* 68 Hun, 589, 23 N. Y. Supp. 237.

In the following cases, at actions in law, a recovery was sustained against the infant for legal services rendered in his behalf in relation to his property: *Searcy v. Hunter,* 81 Tex. 644, 17 S. W. 372, 26 Am. St. Rep. 837; *Sutton v. Henzle et al.,* 84 Kan. 756, 115 Pac. 560, 34 L. R. A. (N. S.) 238; *Nagel v. Chrilling,* 14 Mo. App. 576. But these cases hold that the contract is binding only to the extent of a reasonable compensation.

In *Searcy v. Hunter, supra,* it is said:

"Looking to the condition of affairs in our own state, it seems to us that to refuse to allow an attorney who, at the instance of a next friend, has instituted a suit in behalf of a minor and recovered for him money or property, to claim from the infant a reasonable compensation for his services would be to establish a rule which would operate to the prejudice of the class it is designed

to protect. In such case, where the services have been beneficial to the infant, we are of the opinion that reasonable compensation should be allowed."

The disaffirmance of a contract made by an infant nullifies it and renders it void *ab initio*; and the parties are returned to the same condition as if the contract had never been made. After the infant has disaffirmed the contract, any one may take advantage of such disaffirmance. Where an infant avoids his contract, it cannot thereafter be resuscitated or ratified. 22 Cyc. 616; *Peck et al. v. Cain et al.*, 27 Tex. Civ. App. 38, 63 S. W. 177, and authorities therein cited.

An infant may avoid his contract by different means, according to the nature of the act and the circumstances of the case; but it may be that any act showing unequivocally a renunciation of, or a disposition not to abide by, the contract made during minority is sufficient to avoid it. 22 Cyc. 612. "Looking to the condition of affairs in our state," a different conclusion to that attained in the Texas case should be reached by us.

We believe that the rule in New Hampshire, followed in Massachusetts and other states, should prevail here. That is, where the services pertain to the defense of the liberty or person of the minor, or the prosecution of action for an injury thereto, that the same should be classed as a "necessary," and an action lie against the minor for a reasonable recovery for attorney's fees; but where the legal services are rendered in behalf of the minor in relation to his property, without the intervention of a legal guardian, no recovery for such services should be had in an action at law. As to whether a court of equity or probate court may allow for legal services at the instance of the minor in the administration of the estate or fund or property in such chancery or probate court, without the party having first obtained the approval of the court to render such service, that question is not involved in this case.

It is a well-known fact that in the Five Civilized Tribes, Osage Nation, Quapah country, and other Indian reservations in this state, minors are possessed of valuable landed estates, and are continually coming into such inheritances. The estates of

these Indians, though wards of the federal government, are administered by the probate courts of this state; it being done by the surrender of that jurisdiction to the state tribunals by the federal authority. The federal legislation, heretofore referred to, shows a policy on the part of the federal government of precaution to carefully guard the interests of these Indian minors. The best interests of this state demand the speediest settlement of all Indian estates to the end that as much Indian land as is reasonably possible may become developed and help bear the burdens of the state, county, township, and school district governments. This can be brought about in a most salutary way by the local courts. When it comes to a question as to which line of authorities we will follow, that which permits the next friend, who is often an irresponsible person, to engage counsel for a minor to prosecute a suit at law in his behalf relative to his land, often occasioning an action at law against such minor, thereby affecting his estate, or that which requires first the approval of the probate court, we feel that we should incline to the old rule, as announced by the Supreme Court of New Hampshire, when it was composed of Chief Justice Parker and Justices Upham, Wilcox, Gilchrist, and Woods, and afterwards reaffirmed by the same court, when Chief Justice Sargent and Justice Doe were members of it.

Judgment was rendered by default against the defendants. The objection that the petition does not state a cause of action may be raised on review for the first time in this court. *Leforce et al. v. Haymes,* 25 Okla. 190, 105 Pac. 644; *International Harvester Co. v. Cameron,* 25 Okla. 256, 105 Pac. 189; *Lewis et al. v. Clements,* 21 Okla. 167, 95 Pac. 769; *Guthrie v. Nix, etc., Co.,* 3 Okla. 136, 41 Pac. 343; *Farris v. Henderson,* 1 Okla. 384, 33 Pac. 380.

The judgment of the lower court is reversed, and the cause remanded, with instructions to grant a new trial and proceed in accordance with this opinion.

All the Justices concur.