INTERNATIONAL LAND CO. v. MARSHALL.

No. 814, Ind. T.    Opinion Filed November 24, 1908.

(98 Pac. 951.)

1.    EQUITY—Clean Hands.   Equity will refuse to lend its aid in any manner to one seeking its active interposition who has been guilty of any unlawful or inequitable conduct in the matter with relation to which he seeks relief.

2.    INFANTS—Conveyances—Avoidance—Return   of   Consideration. Where a party fraudulently represents that he is over 21 years of age, when in fact he is only 19 years of age, and such false and fraudulent representations, in connection with his appearance and size, being believed, by means of a deed then and there executed and delivered by him he on account of such fraudulent representations obtains the sum of $125 as a part of the consideration therefor, such party grantor whilst in possession of the land described in such deed will not be permitted to invoke the aid of equity to have such deed cancelled, although it may be absolutely void, without offering to refund the amount of money so fraudulently obtained.

3    SAME.   Although the injured party may have had prior notice that such party was under age, yet if he believed such false representations, which were fraudulently and intentionally made by such party grantor, and, relying thereon, parted with a consideration as result thereof, such party grantor, although the other party may not have exercised reasonable care, will be refused the aid of equity to cancel such deed, though it may be absolutely void, unless he offers to refund the amount of money thus wrongfully obtained.

Kane, J., dissenting.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of the Indian Territory.*

Action by Joseph Marshall, by his next friend, Jeff Marshall, against the International Land Company. Judgment for plaintiff, and defendant appealed to the United States Court of Appeals of the Indian Territory, whence the cause was transferred to the Supreme Court of the state of Oklahoma. Reversed and remanded.

On the 29th day of December, A. D. 1905, the appellee, a minor, by his next friend, Jeff Marshall, as plaintiff, instituted this action in the United States court for the Western district of Indian Territory, at Muskogee, against the appellant, as defendant, alleging in his complaint that the said plaintiff was a minor under the age of 21 years, and brought said action by and through his father and next friend, Jeff Marshall; that on or about the 26th day of December, A. D. 1905, he was a minor, being 18 years of age, and a citizen of the Creek Nation, and as such there was allotted and patented to him certain described real estate; that on said date the said plaintiff endeavored to borrow some money from the defendant, through C. M. Bradley, its president, and offered to give a mortgage on 40 acres of said land as security therefor, and the defendant, through its said president, informed said plaintiff that it would let him have $125, and would take a deed to 40 acres of said land, with the understanding that plaintiff should have the privilege of returning said money and the defendant would reconvey said land to him; that thereupon the said plaintiff accepted said proposition, and executed what was thought to be a deed, conveying 40 acres of said land, and delivered same to the president of said defendant company, and that the said defendant paid to said plaintiff the said sum of $125; that soon after plaintiff received said sum of money and executed said deed to the defendant, conveying as he thought 40 acres of land, he discovered that said defendant had taken a deed to all of said land, being 120 acres; that immediately plaintiff tendered back to said defendant the said sum of $130 in lawful money, and demanded the reconveyance to him of said land, the said sum of money being sufficient to pay all interest and cost of the executing and recording of the deed, and the said defendant refused to accept said sum of money, and refused to reconvey said land to said plaintiff; that the defendant well knew at the time of the execution of said deed, and before the same was executed, and before the defendant had paid the plaintiff said sum of money, that said plaintiff was

a minor, and had no authority to convey said land. Plaintiff then and there in open court tendered to the defendant the sum of $130, alleging that said deed was duly recorded on the 27th day of December, A. D. 1905, in the record of deeds at Wagoner in said district, and said deed is a cloud upon his title. Plaintiff prays for a decree, to the end that the defendant be directed to make and deliver to him a good and sufficient deed, reconveying to him all of the said described land, and, in the event that the defendant fails or refuses to do so, that a commissioner be appointed by the court with full power to act, and that he be instructed to convey all of said land by good and sufficient deed to said plaintiff.

On the 10th day of January, A. D. 1906, the defendant answered, denying that plaintiff is a minor under the age of 21 years, and that he was under the age of 21 years on the 26th day of December, A. D. 1905, and that he did at the time alleged in the complaint endeavor to borrow money from the defendant, through its president, and that in such endeavor offered to give a mortgage on 40 acres of said land, and that defendant, through its president, agreed to loan plaintiff the sum of $125, and as security therefor to take a deed to such land, with the understanding that the plaintiff was to have the privilege of returning said money, upon which the defendant would reconvey to him said forty acres of land, and that any such proposition was made and accepted for a loan of $125 to the plaintiff, and that in drawing up the papers 120 acres, as alleged in the complaint, was covered and included by the deed when under the agreement only 40 acres should have been conveyed, and denies that said plaintiff offered to redeem said land, or any part of it, by paying back or tendering to it the amount he had received from said defendant as part payment under the deed executed by Joseph Marshall to the defendant, conveying to it 120 acres of land, described in the complaint, which defendant admits was allotted to said plaintiff. Defendant denies that at the time the transaction occurred between it and the plaintiff, at which time the defendant received a deed

to the land mentioned in the complaint from plaintiff, its · president, C. M. Bradley, acting for it, knew or had knowledge and belief that said plaintiff was a minor under the age of 21 years. Defendant admits that said deed executed and delivered to it by the plaintiff on December 26, 1905, was filed and recorded at Wagoner, in the Western district of the Indian Territory, but denies that said deed is any cloud upon the plaintiff's title.

For further answer, defendant avers that under the allegations of the complaint, to the effect that plaintiff is a minor under the age of 21 years, and was at the time he made said deed on December 26, 1905, this suit cannot be maintained by him through a next friend, because his right to disaffirm and set aside a transaction of the character alleged does not accrue until his majority. Defendant pleads that it paid the plaintiff, Joseph Marshall, the sum of $375 on the representation of said Joseph Marshall that he was of age, and had a right and capacity to transfer and convey his land, which the defendant, through its president, C. M Bradley, believed to be true, and, acting upon such belief, paid to said plaintiff the said sum of $375 which defendant avers and pleads said plaintiff should refund before he can ask equity in this court; that on December 26, A. D. 1905, the defendant, through its president, C. M. Bradley, purchased lots 3 and 4 and the southeast quarter of the southwest quarter of section 31, township 16 north, range 17 east, in the Creek Nation, Ind. T., from the plaintiff, Joseph Marshall, and agreed to pay him therefor the sum of $1,-400; that under said agreement it did upon that date pay said plaintiff the sum of $125, and execute and delivered to him a duebill for the sum of $1,275; that it paid the said plaintiff the sum of $250, which was credited on said duebill as a partial payment on said land; that said plaintiff appeared to be 21 years of age at the time this contract and deed was made; that he positively and assuredly made the statement to said C. M. Bradley that he was 21 years of age, and had capacity to enter into said contract and execute said deed, upon which representations and state-

ments of said plaintiff the defendant, by and through its said representative, paid to said plaintiff the said sum of $375, believing the transaction to be valid, and believing the statements made by the plaintiff were true as to his age; that, on account of the said representations and assurances made by plaintiff as to his age, he should not be allowed to repudiate and disaffirm said contract in a court of equity without first doing equity by paying back to said defendant the said sum of $375, paid to him upon said statements, which if untrue were fraudulent. Defendant further pleads that if the plaintiff is a minor, and was such on December 26, A. D. 1905, being less than 21 years of age, he cannot repudiate and disaffirm said deed executed and delivered by him to said defendant because of his minority at the time the suit is brought.

Said cause was referred to a master to take testimony, and to report his findings and conclusions as to both fact and law, and on the 23d day of June, A. D. 1906, the cause was heard on the exceptions to the master's report theretofore filed, and the court confirmed the same in all respects, and rendered a decree as prayed for by plaintiff, to which action of the court the defendant saved its exceptions.

In due time an appeal was taken to the United States Court of Appeals for the Indian Territory. On the 25th day of October, A. D. 1906, it was stipulated by counsel that whereas the defendant had prayed and obtained an appeal from the decree of the court in this case to the United States Court of Appeals for the Indian Territory, and desiring to save cost for making up and printing the record, there being but two propositions defendant desires to press upon the appeal, it was agreed that in the light of the evidence taken and filed in this case that the following facts were established by the evidence on file in the case before the master and before the lower court on the trial of said cause, to wit:

(1) That the plaintiff, Joseph Marshall, is a Creek freedman, a citizen of the Creek Nation, not of Indian blood; (2) that as such citizen there was allotted and patented to him, as his distri-

butive share of the lands of the Creek Nation, lots 3 and 4, and the southeast quarter of the southwest quarter of section 31, township 16 north, range 17 east, in the Creek Nation, Ind. T., for which he received a patent executed by the Principal Chief of the Creek Nation; (3) that on the 26th day of December, 1905, said Joseph Marshall was the owner and in the possession of said land; (4) that on said date said Joseph Marshall, by warranty deed in due form, conveyed to the defendant all of the land above described, which was duly acknowledged and properly recorded on the 27th day of December, 1905; that at the time said Joseph Marshall executed said deed he also made an affidavit in words and figures as follows: "Joseph Marshall being first duly sworn, upon his oath states that he was twenty-one years old on June 21st, 1905, and that he makes this affidavit for the purpose of selling his land and receiving money thereon"—(5) that at the time of the execution of said warranty deed aforesaid the plaintiff, Joseph Marshall, was a minor, under the age of 21 years, having been 19 years of age since the early part of June, 1905; (6) that C. M. Bradley, president of the defendant company, acted for it as its agent in the purchase of said land from the plaintiff, Joseph Marshall; (7) that the defendant, through its said agent, C. M. Bradley, agreed to pay as the consideration for said land the sum of $1,400, $125 of which sum was paid to plaintiff, Joseph Marshall, on December 26, 1905, at the time he executed and delivered to the defendant the above-mentioned deed ,and received from the defendant a duebill for the remainder of the consideration; (8) that on December 26, 1905, said Joseph Marshall, in company with Sanders Anderson, another negro, went to the office of the defendant company, and represented to said C. M. Bradley, acting for the defendant in this matter, that he, Joseph Marshall, was 21 years of age, and had been since June 21, 1905; that his mother so informed him, and he made an affidavit to that effect, as appears on the back of the deed, before W. J. Vandiver, notary public, as appears from the above copy of said deed; that the rep-

resentations of said Joseph Marshall that he was of age, taken with his physical appearance, were believed by said C. M. Bradley to be true; (9) that, believing said Joseph Marshall to be of age, said C. M. Bradley, acting for the defendant, did on December 26, 1905, pay to said Joseph Marshall, the sum of $125 as part payment on the land, taking from him the deed above referred to; (10) that on December 27, 1905, the following day, the mother of Joseph Marshall, the plaintiff, went to the office of the defendant, and told the said C. M. Bradley that Joseph Marshall was her son, and that he was only 12 years old, and cautioned defendant not to pay plaintiff any more money on the land; (11) that on December 28 or 29, 1905, the defendant, by and through C. M. Bradley acting for it, paid to Joseph Marshall, the plaintiff, $250 further on the consideration for said land, at which time said Joseph Marshall again represented that he was of age; (12) that on the trial of this case Joseph Marshall testified that he did not know his age.

It is further stipulated that the clerk of the United States court for the Western district of the Indian Territory in making up the transcript of the record may omit therefrom the master's report, the evidence, and the exceptions filed by the defendant to the master's report, and, in lieu thereof, insert this agreement:

"It is further agreed that the only questions for review in this case on the appeal are (1) whether or not the plaintiff is entitled to any relief without paying back to the defendant the $125 received by him on December 26, 1905, at the time the deed was made; and (2) whether or not the plaintiff is entitled to any relief in this case without paying back to the defendant the $250 received by him on December 28 or 29, 1905, as set out in the statement of facts, both of which questions were on the above facts properly presented to the court below on the hearing, and decided by that court against the defendant, to which decision defendant then and there excepted. It is further agreed that these two questions shall be the only points upon which the defendant, as appellant, will assign error in the case."

The appeal was perfected in the United States Court of Ap-

peals of the Indian Territory, and transferred in accordance with law to this court for review.

*N. A. Gibson* and *Geo. S. Ramsey,* for appellant.

*R. P. De Graffenreid* and *F. Scruggs,* for appellee.

WILLIAMS, C. J. (after stating the facts as above). Two principles settled by the great weight of authority respecting the contracts and liabilities of infants, apparently not antagonistic, abstractly stated, in practical application, produce two conflicting lines of adjudications: (1) The contracts of infants, when not for necessaries, impose nothing but voidable liabilities; (2) Infancy being in law a shield, and not a sword, cannot be pleaded to avoid liability for frauds, trespasses, or torts. To reconcile same, or, rather, to determine properly where one begins and the other ends, is not without difficulty.

The first reported adjudication is that of *Grove v. Nevill* (decided during the reign of King Charles II) 16 Car. II, Rot. 401, 83 Eng. Rep. (Full Reprint) 1238, King's Bench Book 12, p. 1238, 1 Keble, 778, being "an action upon the case in the nature of deceit on sale by the defendant of goods as his own, whereas in truth they were another's. The defendant pleads nonage at the time of the sale, to which the plaintiff demurred." One of the judges considered that the same was a tort as waste or escape, and that nonage was no plea, but the majority of the court was of the contrary opinion, holding that there was no actual tort, or anything *ex delicto,* but only *ex contractu,* which was voidable by plea, and only a tort by construction of law. One of the judges declined to vote either way.

The next case is that of *Johnson v. Pie,* (decided a year later) 1 Lev. 169, 83 Eng. Rep. (Full Reprint) 353, King's Bench Book 12, p. 353, which was an action of case, "for that the defendant, being an infant, affirmed himself to be of full age, and by means thereof the plaintiff lent him 100 pounds, and so he had cheated the plaintiff by this false affirmation. After verdict for the plaintiff of not guilty, and 100 pounds damages, 'twas

moved in arrest of judgment that the action would not lie for this false affirmation; but the plaintiff ought to have informed himself by others, and cited *Grove and Nevill's Case*, to be adjudged in this court in Easter Term, 16 Car. 2, Rot. 400, where in case against an infant for selling a false jewel, affirming it to be a true one, 'twas adjudged the action did not lie; to which 'twas answered that this is a trespass on the case, and an infant is chargeable for trespasses, though not for contracts." Two of the judges held that the action did not lie because the affirmation, being by an infant, was void, and that it was not like under trespass, felony, etc., for under such circumstances a fact or act was done. The other judge doubted, and was of the opinion that infants are chargeable for trespasses, and so if he cheat with false dice, etc.

The English law from the earliest period has thrown the mantle of protection around the minor or infant on account of his ignorance and inexperience, and the courts have experienced great difficulty in applying the facts to said principles. In many cases they have either expressly denied or absolutely ignored the doctrine that an infant can be held liable in a court of law for a fraud or deceit connected with a contract, limiting such application to acts purely *ex delicto*. They proceed upon the ground that the invalidity of an infant's contract is a matter defensive for his protection, and of which all persons dealing with him must take notice; that neither an honest belief by the opposite party that he is of full age, nor a false affirmation to that effect by himself, operates to take the matter out of the general rule since the incapacity to bind himself springs not out of the belief of either of the contracting parties upon the subject, but upon the existence of his minority; that to hold an infant liable for or estopped by any fraud or falsehood in any manner connected with a contract, whether before or at the time of making it, is to deprive him of the protection which the law has given him in consideration of his ignorance and inexperience.

There is a long line of decisions, both English and American,

sustaining the doctrine announced in the case of *Johnson v. Pie,* *supra.* *Brown v. Dunham,* 1 Root( Conn.) 273; *Norris v. Wait,* 2 Rich. Law⁻ (S. C.) 148, 44 Am. Dec. 283; *West v. Moore,* 14 Vt. (6 Book Ann. Ed.) 444, 39 Am. Dec. 235; *Schenk v. Strong,* 4 N. J. Law, 97; *Jennings v. Rundall,* 8 T. R. 335; *People v. Kendall,* 25 Wend. 399, 37 Am. Dec. 240; *Penrose v. Curren,* 3 Rawle (Pa.) 351, 24 Am. Dec. 356; *Brown et al. v. McCune,* 5 Sanf. (N. Y.) 224; *Wilt v. Walsh,* 6 Watts (Pa.) 9; *Price v. Hewett,* 8 Exch. 146; *Green v. Greenbank,* 2 Marsh. 485; *Morrill v. Aden,* 19 Vt. 505; *Hewitt v. Warren,* 10 Hun. (N. Y.) 560. In the case of *Evroy v. Nicholas et al.,* 2 Eq. Ca. Abr. 488, 22 Eng. Rep. (Full Reprint) Chancery Book 2, p. 415, decided in the year 1720, it was said:

"A., an heir to his father and special occupant, became entitled to a lease for three lives of certain lands in Hampshire, and, being an infant of about 17 years of age, B., who was his guardian, or acted as such, in 1727 did, by A.'s approbation, for 157 pounds sign a demise of the said lands to the plaintiff for 21 years, to commence from May, 1730, at which time a lease in being would determine, about six months before A. would come to age. The money was either paid to A. himself or to his guardian by his consent, and the infant, to shew his good liking for the bargain, witnessed the deed and the receipt of the money. B. proving afterwards insolvent, and having made several disadvantageous bargains for A., he would have set aside this lease, and actually demised the lands to C., another defendant, who entered upon and evicted the plaintiff and took a crop of corn which the plaintiff had sowed. The bill against A. was to make a new lease of the premises for 21 years, or to refund the 157 pounds fine; and against C. to have satisfaction for the crop. And it was objected for A. that no interest passed by the lease of the guardian, who was nominal, neither testamentary guardian, nor guardian in socage; and, if he had been so, the lease could not be obligatory during A.'s nonage, and that, therefore, the lease in point of law was absolutely void; and, although A. witnessed the lease, yet that could not bind him any more than if he had really executed it, which he might have avoided at his coming to age. King, Chancellor. Infants have no privileges to

cheat men. This lease was made with the consent and approbation of A., the infant, who was above the age of discretion, and knew what he was doing, and it is certain his consenting to the lease was the only inducement the plaintiff could have to take it at so large a fine, being he was not to possess the lands 'till six months before the determination of the infancy, etc., and therefore, whether ever the money came to A.'s hands or not, he ought to make good the lease or refund the fine; for otherwise the plaintiff and all other persons would be defrauded by the collusion of an infant and his guardian, and so decreed that, A.'s refusing to make a lease, he shall repay the fine. But, as to the crop, his lordship would not meddle about that, because in point of law the lease was absolutely null."

In the case of *Drury v. Drury* (decided by the Lord Chancellor in the year 1760) 2 Eden, 39 Reg. Lib. A. 1760, fol. 465, 28 Eng. Rep. (Full Reprint) Chancery Book 8, p. 818, it was declared "that the defendant, Lady Drury, being an infant at the time of her executing the indenture on the 5th of October, 1737, was not barred of her dower in the intestate's real estate, nor of her share of her personal estate, under the statute of distribution." After the decree had been pronounced, the Earl of Buckinghamshire and Lady Mary Ann Drury intermarried, and, the cause being revived, an appeal was prosecuted to the House of Lords. *Earl of Buckinghamshire v. Drury*, 2 Eden, 59, 28 Eng. Rep. (Full Reprint) Chancery Book 8, p. 818. In that case the Earl of Hardwicke said:

"See the case of *Davilla v. Davilla*, 2 Vern. 724, before cited, and Lord Cowper's reasoning at the end of the case, that the husband might think it not necessary to make a will because he might consider his wife barred by the agreement. A contrary construction would be to make this adult infant commit a fraud upon her husband by claiming in contradiction to the articles. But minors are not allowed to take advantage of infancy to support a fraud. There was a decree by Lord Cowper (analogous to the case in 2 Leo, 108, of *Pigot v. Russel*), where tenant in tail applied to borrow money on a mortgage. The attorney's clerk who engrossed the deed was the issue in tail, was then about the age of 18, and knew of his being issue in tail, but took no notice of it. Lord

Cowper relieved against this minor, and would not suffer him to take advantage of his own fraud. *Vide* note following *Watts v. Haiswell, infra.* In this case I must take it Sir Thomas Drury relied on this agreement, and therefore made no will, and otherwise that he was drawn in and deceived."

And it was ordered by the House of Lords:

"That so much of the said decree complained of by the said appeal whereby an account is directed of the personal estate of the intestate, Sir Thomas Drury, etc., be affirmed, and that the residue of the said decree should be reversed; and it was declared that the respondent is bound by the agreement entered into in consideration of, and previous to, her marriage with the said Sir Thomas Drury, and that the same ought to be performed and carried into execution, and that the respondent is thereby barred of her dower, and of any share of the said Sir Thomas Drury's personal estate under the statute for distribution of intestate's estates."

In the case of *Ex parte Unity Joint-Stock Mutual Banking Association, in the Matter of Octavious King, a Bankrupt, and Ex parte in the same matter* (decided June 1, 1858, before the Lord Justices) 3 Deg. & J. 63, 44 Eng. Rep. (Full Reprint) Chancery Book, 24 p. 1194, Lord Justice Knight Bruce said:

"It is unnecessary to say what in this case we might have thought it fit to do if we had been exercising a jurisdiction merely legal, for our jurisdiction is equitable as well as legal. Again, with respect to our equitable jurisdiction, it is not material to say what we might have thought the proper course to be taken in the absence of decision; for I think that, upon the admitted facts, the case is concluded by the judicial opinions of Lord Cowper, Lord Hardwicke, Lord Thurlow, and other eminent judges which it would be improper in us practically to question. A young man who from his appearance might well have been taken to be more than 21 years of age engaged in trade, and wished to borrow or to obtain credit, and for the purpose of so doing represented himself to the petitioning creditor as of the age of 22, expressly and distinctly so represented himself. We feel no difficulty or doubt on the question whether the minor did at the time believe or not believe what he said, for it is impossible from the materials before us to infer that he did believe his statement to be true or was

ignorant of his own age when he obtained the money. The question is whether in the view of a court of equity, according to the sense of decisions not now to be disputed, he has made himself liable to pay the debt, whatever his liability or nonliability at law. In my opinion we are compelled to say that he has."

The Lord Justice Turner:

"I have the strongest inclination to expunge this proof, but the authorities are too strong to permit us to do so. If the course which has been taken by courts of equity on this subject is to be altered, it must be so by the House of Lords, and not by us."

The other class of decisions, both English and American, whilst recognizing the nonliability of an infant upon its contract, yet differentiate between holding him upon a contract and making him responsible for his frauds, deceits, and falsehood in matters connected therewith, but not forming a constituent part of it, wherever the action brought or defense pleaded sounds in tort and not in contract, although the deceit or fraud upon which the same is based was connected with the contract. In the case of *Grove v. Nevill, supra,* the gravamen was that the infant by deceit in the sale of goods as his own, whereas in truth they were another's, the complainant was damaged, there being no allegation that the infant then and there falsely alleged that he was over the age of 21 years, and that the plaintiff relying upon such statement bought said goods; and it appears that the case of *Johnson v. Pie, supra,* was decided upon the authority of *Grove v. Nevill, supra,* the reasoning of which was based upon a false assumption. In the argument of *Johnson v. Pie* the Grove and Nevill Case was cited, "where, in case against an infant for selling a false jewel, affirming it to be a true one, it was adjudged the action did not lie," and the case seems to have been considered as if the affirmation that he was of age was to be regarded as a part of the contract. But there is a wide difference between the two cases. In the Grove and Nevill Case the subject-matter of the contract was the jewel which was sold. The affirmation that it was a true one was a false warranty of the article sold. If the

Vol. 22—45

defendant had been of age, assumpsit might have been maintained.
.The infant was not to be charged by adopting a different form of
action. But the representation in *Johnson v. Pie* and in the pres-
ent case, that the defendant was of full age, was not a part of
the contract, nor did it grow out of the contract, or in any way
result from it. It is not any part of its terms, nor was it the con-
sideration upon which the contract was founded. No contract
was made about the defendant's age. The sale of the goods was
not a consideration for this affirmation or representation. The rep-
resentation was not a foundation for an action of assumpsit. The
matter arises purely *ex delicto.* The fraud was intended to induce,
and did induce, the plaintiff to make a contract for the purchase
of the land covered by the deed, but that by no means makes it a
part and parcel of the deed. It was antecedent to the deed, and,
if the infant is liable for positive wrong connected with the con-
tract, but arising after the contract is made, he may well be an-
swerable for one.committed before the contract was entered into,
although it may have led to the contract. It has been said
that "all the infants in England might be ruined" if infants were
bound by acts that sound in deceit. But this cannot be a reason
why the action should not be maintained for fraudulent wrongs,
done, for the same reason would seem to apply equally in cases
of slander, trover, and trespass. The latter are as much the re-
sults of indiscretion as the former, and quite as likely to be com-
mitted. In Bac. Abr., Infancy, 1, 3, it is said:

"Also it seems that if an infant, being above the age of dis-
cretion, be guilty of any fraud in affirming himself to be of full
age, or if by combination with his guardian, etc., he makes any
contract or agreement, with the intent afterwards to elude it by
reason of his privilege of infancy, that a court of equity will deem
it good against him according to the circumstances of the fraud."
(3 Gwillim's Bac. 604.)

If an infant has fraudulently represented that he is of full
age, or actively and purposely conceals his minority, whereby the
other party is induced to enter into a contract, then it is held
that the infant will be estopped in equity by his fraud from

avoiding the contract on the ground of infancy to the prejudice of the other contracting party. *Ferguson v. Bobo,* 54 Miss. 121; *Davidson v. Young,* 38 Ill. 145; *Conroe v. Birdsall,* 1 Johns. Cas. (N. Y.) 127, 1 Am. Dec. 105.

In the state of New Hampshire there is an apparent conflict of authority. In the case of *Fitts v. Hall,* 9 N. H. 441, an infant had bought a lot of hats, for which he had executed his note, and, in an action upon the note, he availed himself successfully of the plea of infancy. Suit was then brought against him for deceit practiced in affirming at and before the purchase that he was an adult, and this was maintained in an elaborate opinion, reviewing the same to some extent, and expressly disapproving the case of *Johnson v. Pie.* Later, in the case of *Prescott v. Norris,* 32 N. H. 101, the Supreme Court of the state, while citing the case of *Fitts v. Hall,* apparently with disapproval, held that an infant who sold and warranted a barrel of gin to be pure could not be held liable for the false warranty because that was a part of the contract.

Likewise, in South Carolina, in the case of *Norris v. Wait,* 2 Rich. Law (S. C.) 148, 44 Am. Dec. 283, it was said that an infant could not prejudice his rights in a court of law by neglecting to state his title to the purchaser of his property from another; yet afterwards, in the case of *Vance v. Word,* 1 Nott & McC. (S. C.) 199, 9 Am. Dec. 683, it was held that infancy was no defense to an action for a deceit practiced in selling a horse.

In the case of *Badger v. Phinney,* 15 Mass. 359, 8 Am. Dec. 105, the Supreme Court of that state held that where goods had been obtained by a minor upon the false affirmation that he was of age only vitiated the contract so that no title ever vested in the minor, and that he might be treated as having unlawfully converted them, and might be sued in trover or replevin. This doctrine was approved by Judge Story (Story on Contracts, §§ 107-111.)

In this case it is not necessary to determine as to the liability

in actions at law of infants for frauds and torts connected with contracts. The following propositions are raised in this record: (1) Whether or not the plaintiff is entitled to any relief, without paying back to the defendant the $125 received by him on December 26, 1905, at the time the deed was made and delivered to the defendant. (2) Whether or not the plaintiff is entitled to any relief in this case without paying back to the defendant the $250 received by him on December 28 or 29, 1905, and credited as a part payment on the consideration for said land. It is settled by the great weight of authority that equity will regard the circumstances surrounding the transaction—the appearance of the minor; his intelligence; the character of his representations; the advantage he has gained by the fraudulent representations; and the disadvantage to which the person deceived has been put by them in determining whether he shall be permitted to invoke successfully the plea of infancy. That an infant must restore the property which he obtains on a contract where he has been guilty of deceit or fraud before he can avoid it is the universal rule in equity. *Petty v. Roberts,* 7 Bush. (Ky.) 411; *Damron v. Commonwealth,* 110 Ky. 268, 61 S. W. 459, 96 Am. St. Rep. 453; *Schmitheimer v Eiseman,* 70 Ky. 298; *Davis v. Tingle,* 8 B. Mon. (Ky.) 542; *Wright v. Arnold,* 14 B. Mon. (Ky.) 638, 61 Am. Dec. 172; *Hayes, Adm'x, v. Parker,* 41 N. J. Eq. 631, 7 Atl. 511; *Pemberton Building & Loan Association v. Adams,* 53 N. J. Eq. 258, 31 Atl. 280; *Adams v. Fite,* 3 Baxt. (Tenn.) 70; *Ostrander v. Quinn,* 84 Miss. 230, 36 South. 257, 105 Am. St. Rep. 426; *Ferguson v. Bobo,* 54 Miss. 121; *Levy v. Gray,* 56 Miss. 318; *Brantley v. Wolf,* 60 Miss. 430; *Yeager v. Knight,* 60 Miss. 732; *Willie v Brooks,* 45 Miss. 542; *Upshaw v. Gibson,* 53 Miss. 341; *Baker v. Stone et ux.,* 136 Mass. 406; *Thormaehlen v Kaeppel,* 86 Wis. 382, 56 N. W. 1089; *Ryan v. Growney,* 125 Mo. 483, 28 S. W. 189, 755; *Davidson v. Young et al.,* 38 Ill. 149; *Bradshaw v. Van Winkle,* 133 Ind. 134, 32 N. E. 877; *Williamson v. Jones,* 43 W. Va. 562,, 27 S. E. 413, 38 L. R. A. 694, 64 Am. St. Rep.

891; 2 Pomeroy Eq. Jur. (2d Ed.) § 945; 2 Hermon on Estoppel & Res Adjudicata, § 1119; Bigelow on Estoppel (5th Ed.) p. 600; 2 Kent's Com., p. 240.

In the case of *Alfrey v. Colbert* (Ind. T.) 104 S. W. 646. the court said:

"It is contended by the appellants that the appellee misrepresented his age, and perpetrated a fraud in inducing them to pay $550 for the land in controversy. On the other hand, the appellee contends that the money paid to him while a minor has been wasted and squandered, and that consequently he should not be compelled to return the same. The court below found that the plaintiff at the time of executing the first and second deeds was inexperienced; that his education and training was limited; that plaintiff was of weak and feeble mind, and, although not insane, his case comes within the category where his property should be placed in the hands of a curator; that the consideration paid by defendants was wholly inadequate. But, in view of the misrepresentations made by the appellee as to his age, we think the court below very properly ordered that the appellee should refund to the defendants within one year from the date thereof all moneys paid to him for and on account of the purchase of said lands, which the court finds to be $555, with interest at the rate of 6 per cent. per annum."

From the facts agreed to have been established by the evidence, if the appellee, Joseph Marshall, had been of age, he could have executed a valid deed to the appellant covering said land, and on account of the affidavit made by said appellee for the purpose of selling said land that he was 21 years of age, and had been since June 21, 1905, and, taken in connection with his physical appearance, the appellant, as a reasonable person, believed the same to be true; that the said apellant at the time the deed was executed paid to the appellee the sum of $125 and executed a proper note for the balance of the purchase price thereon. "He who comes into equity must come in with clean hands." "He that hath committed iniquity shall not have equity." Pomeroy's Eq. Jur. (3d Ed.) § 397. The appellee will not be permitted to invoke the

powers of equity for the purpose of having the conveyance canceled without offering to return the said $125.

From the facts agreed, as proved, it further appears that on the 27th day of December, 1905, the day after the said $125 was paid to the appellee, his mother stated to the appellant that he was only 12 years old, and cautioned the defendant not to pay plaintiff any more money on the land. There is no agreement as to the proof as to whether or not appellant made reasonable investigation in order to ascertain whether or not the statement of appellee's mother was true. It appears that the appellee in fact was 19 years of age, and that his mother represented him to be only 12 years of age. The question arises as to whether or not negligence on the part of the officer of the appellant company, although the appellee had been guilty of fraud or deceit, more particularly guilty of the specific criminal offense known as false pretenses under the laws in force in that jurisdiction, would take that transaction out of the rule. Equity is to give relief to parties where it cannot be afforded at law, but equity will refuse to lend its aid in any manner to one seeking its active interposition who has been guilty of any unlawful or inequitable conduct in the matter with relation to which he seeks relief. 16 Cyc. 144. From the agreed proof, it appears that the appellee not only on the 26th day of December, 1905, practiced deceit or fraud upon the appellant company, thereby securing the sum of $125, but that a few days thereafter, by repeating the same fraud or deceit, secured the additional sum of $250. The fact that in the meantime information may have come to the officer of the appellant company, which, had it been reasonably followed up and investigated, would have prevented such additional fraud or deceit from having been practiced upon it, does not lessen the fraudulent acts of the appellee. It appears that the appellee is in possession of the land covered by the deed. Is a court of equity to lend its jurisdiction to the party initiating such fraud and deceit by cancelling this deed, though it be void? If so, it lends encouragement to such fraud.

Equity says to the appellee: "you must invoke my jurisdiction with clean hands, having committed no iniquity . in the transaction about which its power is sought to be exercised. If, as a result of your fraudulent act, inconvenience follows to you or the subject thereof, it flows from the necessary consequences of your own act." The doctrine of estoppel does not apply in this case. Aci June 30 1902, c. 1323, §§ 16, 17, 32 Stat. 503, 504; Act April 21, 1904, c. 1402, 33 Stat. 204.

As a general rule an infant's conveyance of realty cannot be conclusively avoided by him until he reaches full age. *Welch v. Bunce*, 83 Ind. 382; *Kilgore v. Jordan*, 17 Tex. 341; *Cummings v. Powell*, 8 Tex. 80; *Harrod v. Myers*, 21 Ark. 592, 76 Am. Dec. 416; *McCarthy v. Nicrosi*, 72 Ala. 332, 7 Am. Rep. 418; *Singer Mfg. Co. v. Lamb*, 81 Mo. 221; *Irvine v. Irvine*, 5 Minn. 61 (Gil. 44) ; *Zouch v. Parsons*, 3 Burr. 1794; *Stafford v. Roof*, 9 Cow. (N. Y.) 626; *Bool v. Mix*, 17 Wend. (N. Y.) 119, 31 Am. Dec. 285; *Matthewson v. Johnston*, 1 Hoff. Ch. (N. Y.) 560; *Chapman v. Chapman*, 13 Ind. 396. But these authorities apply to voidable, and not void, deeds. No question is raised, however, as to the right of the infant, by his next friend, to institute this action before he attains his majority. However, the rule seems to be that, where the deed of the infant is absolutely void, there could be no objection to a suit during his infancy to have it declared void. *Swafford et al. v. Ferguson et al.*, 3 Lea (Tenn.) 292, 31 Am. Rep. 639. However, in note to *Craig v. Can Bebber*, 100 Mo. 584, 13 S. W. 906, 18 Am. St. Rep. 671, it is stated, referring, to the case of *Swafford v. Ferguson, supra*: "It may be remarked that this case virtually stands alone among recent cases in its persistent adherence to a criterion long since exploded."

We are inclined to the doctrine, however, that where the deed is absolutely void, and there is no question of affirmance or disaffirmance, suit may be maintained during infancy to have it declared void. But in this instance, the appellee, being guilty of unlawful or inequitable conduct in the matter with relation to which

he seeks relief, not offering to do equity, cannot have the interposition of the powers of equity. It may be insisted by appellee that after he reaches his majority he can more readily find a purchaser for said premises with this conveyance canceled, although it may be absolutely void; but a party with unclean hands with relation to the matter about which he seeks relief for his convenience cannot be permitted to have the aid of equity without purging himself. If a court of equity were to be permitted to lend its aid for any such purpose without equity being done by the party invoking its aid, the purpose for which courts of equity came into being would become abortive.

The judgment of the lower court is reversed, with instructions to proceed in accordance with this opinion.

Reversed and remanded.

Dunn, Hayes, and Turner, JJ., concur; Kane, J., dissents.