## DOWLEN et al. v. CROWLEY.

No. 22290.    Nov. 27, 1934.

Rehearing Denied Dec. 18. 1934.

Wm. T. Powell and Stevens & Cline, for plaintiffs in error.

Dudley B. Madden and Walter Hubbell, for defendant in error.

PER CURIAM. This action was commenced by temporary restraining order having been issued by the county judge in the absence of the district judge upon the petition of plaintiff against the defendant, Henry Crowley. The cause was tried by the court, who rendered a judgment in favor of the defendant, denying to plaintiff his prayer for an injunction. The plaintiff appeals, and the parties will be referred to as they appeared in the trial court.

Plaintiff in his petition alleges he is owner of 240 acres of land and that defendant is owner of 160 acres in the same township and range and a part of said land joins. That Beaver creek is narrow and winding, and is wholly inadequate in times of high water to carry all the water that drains into it above the lands of plaintiff and defend-

ant, and does in times of high water overflow its banks and spreads over the lands of plaintiff and defendant.

That defendant is now constructing a levee or fill on his land at a point above the lands of plaintiff, and is obstructing the flow of said Beaver creek, causing a large part of its current to overflow the natural banks of said stream on the south side, thereby causing the water to run down and across the lands of plaintiff lying south and east of the place where said levee or fill is being constructed. Plaintiff states that said current will waste or destroy his soil and crops growing upon said land and will lessen the value of all the lands of plaintiff; that said act of defendant is wrong, and if permitted to continue will do plaintiff great and irreparable damage, and plaintiff has no adequate remedy at law; that defendant be perpetually enjoined from construction of said fill or dam along the said Beaver creek at the point or place designated.

Defendant filed answer to plaintiff's petition, admitting that he was at the time of the commencement of this suit about to construct a levee about 210 feet long, theretofore built on the east side of a slough at a point about 800 feet south of the northwest corner of plaintiff's land; that before the building of any dykes along said slough or creek at or near defendant's said land, said land was not subject to overflow from ordinary floods, and in time of high water the flood water flowing into the creek were accustomed to first raise the water then gathered in the creek and back it into said slough until in time of the extraordinary freshets it would flow out of said slough in a southerly and easterly direction, and uniformly over the southwest portion of defendant's land and rapidly drain away into said creek along a wide face of said creek. That before the building of said dykes, part of the flood water flowing down said creek was accustomed to be discharged in part in a swale extending from said creek in a southwesterly direction from a point near the southwest corner of defendant's land and in part to be discharged through another swale extending in a southwesterly direction from said creek from a point on said creek about 800 feet east of the southwest corner of defendant's said land upon and across the land of plaintiff herein.

That heretofore, at an exact time to said defendant unknown, a dyke was built by the then owners of plaintiff's land across said swale last hereinbefore mentioned for the purpose of holding back and retarding the flow of flood waters from said creek upon and across the land of plaintiff, and that approximately four years ago and before defendant had built any dyke upon his own land, the then owner of the lands right west of said creek caused another dyke to be built across said swale above mentioned, the effect of the said dykes being to obstruct the flow of flood waters from the courses in which they naturally flow and hold back and raise the flood waters of said creek to a greater depth than they were theretofore accustomed to rise; that by so doing the flood waters were cast in enormous volumes upon the land of defendant and innundated more than 60 acres thereof; that by reason of the obstruction and holding back of said flood waters, as aforesaid, the flood waters of said creek and slough were made to flow upon defendant's land and flood the same, washing away the soil and destroying crops so that, about three years before, defendant, for the purpose of protecting himself against said excessive flood waters, caused to be erected a dyke across said depression in the bank of said slough about 800 feet south of the northwest corner of his said land for the purpose and with the intent to prevent the flow of said excess of flood waters upon his land to its injury, as aforesaid.

That within the last year, excessive flood water collected upon said land by said dyke, south of his said land, as aforesaid, and caused said dyke constructed by defendant to be washed away, with the result that a strong and swift current of water was poured upon and across his said land, injuring and destroying large areas thereof. That because of said washing away, it is necessary for the protection of defendant's land to restore and reconstruct same across said depression, and that it is more important at this time to reconstruct same, because and for the reason that the natural current and excess flood water, so cast upon said land by said plaintiff, as aforesaid, has deepened said depression along this said west boundary line and has washed a deep swale along and across his said land, which was not there before the building of said dyke by said plaintiff.

That the rebuilding of said dyke by defendant will in no way injure plaintiff or cause his land to be flooded to any greater extent than it would have been flooded had none of said dykes been built, and that if defendant's land should be subjected to greater flooding at this time than it would have been prior to the building of said dyke, said excess flooding would be due entirely to the holding back and obstruction of said flood waters from their natural courses by

the building of the dyke situated upon said plaintiff's land, as hereinbefore described.

That therefore plaintiff take nothing by his suit herein, and that said injunction be denied.

There follows a cross-petition by defendant for damages, but upon the motion of plaintiff same was stricken by the court and no exceptions taken or assignment of error, and the same is not before us.

Plaintiff thereafter filed reply denying each and every allegation and averment in said answer contained, and for further answer states that if any dyke or dam was built on lands to the west of the lands of plaintiff and defendant, as alleged by defendant, the same was not constructed or built by plaintiff or those in privity with him, nor did plaintiff or those of whom plaintiff purchased the lands in controversy in any way cause the construction of said dykes or dams, and that the same are not either in whole or part upon the lands of plaintiff, nor has plaintiff ever undertaken to exercise dominion or control over same, nor is he responsible therefor.

Further replying, plaintiff states that the dams or dykes erected across said swales by prior owner or owners had been washed out to nearly the former level of said swales or sloughs, and that plaintiff never at any time after acquiring ownership undertook to reconstruct same, and that plaintiff has permitted said swales or sloughs to remain in their natural state; and, further, that plaintiff offered to defendant that he would take over and remove the whole of said dams or dykes so constructed, so as to completely restore to it the natural flow of the water through same and the flow of water be completely the same as in its natural state, but defendant stated to plaintiff that he did not care to have remaining part removed as he had decided to build some dykes at certain places on his own land.

On March 24, 1931, trial was had, resulting in judgment for the defendant. Within time a motion for a new trial was filed to which, upon being overruled, plaintiff took exception and prosecutes this appeal. Petition in error is filed with eleven alleged errors of the court upon which reversal is asked, but in our opinion it is sufficient to consider this case upon the fifth and sixth only, as being fully decisive of the case:

"Fifth—The court erred in rendering said judgment and decision, because the same is not supported by the law or evidence and the evidence is insufficient.

"Sixth—That said judgment and decision is contrary to the law and rendered on the wrong theory of law."

It is plain from the answer of defendant, and the conclusion must be reached from the evidence, that defendant was only acting in reconstructing the dyke or dam complained of to protect his property against an added volume of water cast upon the same by reason of a dyke or dam across the swale above his premises constructed by prior owner. In other words, flood waters of the creek which affected this land were accustomed to escape through two channels; one, the main channel or Big Beaver creek, and the other, the slough or waterway on the plaintiff's land a quarter of a mile down stream.

"Q. You know where this swale is that runs down through Dowlen's (plaintiff) farm? A. Yes. Q. It goes down and cuts back into the creek? A. It goes into the creek down there? Q. How high would the water have to get before the water would go through here? A. Half bank full." (C.-M. page 161.)

In 1925 one Powell, then owner of the Dowlen land, dammed this slough, or waterway, thus closing one of the flood waterways, as appears from the testimony (C.-M. pp. 155, et seq.) as follows:

"Q. I'll ask you to state to the court when the dyke was put across there? A. Powell put it in that spring before he sold in the fall or winter. Q. Sometime in 1925? A. Yes, sir, along in there."

Upon Powell discovering that the dyke or dam was injuring Crowley, he, Powell, cut it; thereafter Dowlen, plaintiff, restored it, as appears from the testimony (C.-M. p. 155) as follows:

"Q. Have you noticed anything that has been done to that particular dyke or fill since it was built? A. Yes, sir; after Mr. Powell cut it and Mr. Alexander lived on John Dowlen's place, he refilled the cut. Q. What was the condition of the dyke when Dowlen purchased the land? A. It was cut down—cut in. Q. At whose suggestion was the dyke cut? A. I asked Mr. Powell to cut it."

It would further appear that the effect of this dam was to back up the flood water of the creek to overflow in ordinary rises and cause it to flow with increased current across defendant's land, as appears from testimony. (C.-M. p. 162) as follows:

"Q. When was this overflow before the dyke was put in? In what manner would it go across your farm? A. Go down east side where the bridge is down here and spread out over the land. Q. Do any wash-

ing? A. Nothing to speak of until the levee was put in. Q. Tell the court what difference in the condition it is now and five years ago with reference to wash? A. There is a break or wash something in the neighborhood of 100 feet and about 60 feet wide, sloping on each side. Q. Tell the court what difference the condition is now compared to two or three years ago? A. Well, I don't think there was any wash there three or four years ago. I don't think any wash there at all. May have been a slight depression —no wash."

Now, Crowley, defendant, assuming that it was the only thing he could do, rebuilt the levee across the face of the depression over which the flood waters were coming, as appears from his testimony as follows:

"Q. How come you to build this dyke? A. I done it in order to protect my land from this wash here. Q. Dyke on Mr. Dowlen's place was intact at that time? A. Yes, sir. Q. When did you build it? A. Two years ago this spring. Q. You are trying to put them back in the same condition they were before May 5, 1930? A. Yes, sir. I couldn't get any adjustment." (C.-M. pp. 157, 166.)

It therefore appears that plaintiff himself had blocked the water going through the swale, and defendant, not being able to get any adjustment for the damage and injury caused by the expelling of a larger volume of water upon his property, was undertaking to repel it.

Angell on Water Courses, sections 333 and 334, lays down the following principle of law:

"A riparian proprietor may in fact legally erect any work in order to prevent his land being overflowed by any change in the natural state of the river from being altered. But a riparian proprietor, for his greater convenience and benefit, has no right to build anything which, in time of ordinary flood, will throw the water on the ground of another proprietor, so as to overflow and injure them."

We have carefully reviewed the cases cited by counsel for plaintiff in error and those referred to in brief of defendant, and, in our opinion, the Illinois case (Wills v. Babb, 222 Ill. 95, 78 N. E. 42) cited by plaintiff is controlling, wherein the court says:

"In the case of Avery v. Empire Woolen Company, 82 N. Y. 582, the plaintiff's predecessor in title constructed, and the plaintiff maintained, an embankment upon his land, which changed the position of the channel of a stream and turned the water on defendant's land. Defendant constructed an embankment turning the stream back, and it was held defendant had the right to dam against the water so turned upon his land, and if, in protecting himself, he obstructed the flow of water and turned the stream further back than it originally was, plaintiff could not complain, as it was consequent upon his own wrongful act."

In the case of Wilhelm v. Burleyson, 106 N. C. 381, 11 S. E. 590, the plaintiff brought an action for damages for erecting a dam upon the bank of a creek so that the water overflowed the plaintiff's land. On a hearing it appears that the plaintiff had previously erected a dam, which obliged the defendant to erect one for his own protection. It was said:

"The plaintiff first built a wall on his side of the creek, and thereby caused the water to overflow the defendant's land on the other side and lower down. The defendant had a right to build a dam on the north bank to stop the overflow brought about in that way, and if, in effecting that object, it became necessary to obstruct the flow of water in the creek and cause it to 'eddy' as in freshets to flood more of the plaintiff's land than had previously been covered in freshets, the defendant was not answerable in damages for such additional overflow."

To the like effect is the case of Harding v. Whitney, 40 Ind. 379, in which the court said:

"The plaintiff charged that the defendant had obstructed a stream of water and caused it to flow over the lands of the plaintiff adjoining. The defendant answered that the plaintiff had previously diverted the water course to defendant's injury, and for his own protection he had provided against its flow over his land and restored it to its natural channel, and a demurrer was filed to the answer and overruled," and it was held there was no error in the ruling of the trial court upon the demurrer.

The Supreme Court of Pennsylvania has passed on the same question in Kauffman v. Griesemer, 26 Pa. 407, saying:

"The plaintiffs had no right to insist upon his (the defendant's) receiving waters which nature never appointed to flow there, and against any contrivance to reverse the order of nature he might peaceably and on his own land take measures of protection. * * * The elevation which protected him in ordinary times could not be reduced without his consent, and when the undue liberty was taken, he was not a wrongdoer in protecting himself from the consequences."

We are therefore constrained to hold that defendant was acting within his rights, and, as stated by this court in International Land Co. v. Marshall, 22 Okla. 693, 98 P. 951:

"Equity will refuse to lend its aid in any measure to one seeking its active interposi-

tion who has been guilty of any unlawful or inequitable conduct in the matter with relation to which he seeks relief."

We therefore conclude there was no error of the trial court, and the same is affirmed.

The Supreme Court acknowledges the aid of District Judge Enloe V. Vernor, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.