## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Thomas Fleming

v.

Virginia Discount Auto Sales, Inc.

June 27, 1972

BY JUDGE ALEX H. SANDS, JR.

This action was originally instituted in the Civil Justice Court of the City of Richmond in the amount of $2,268.00, seeking the rescission of a contract involving the purchase of an automobile by the plaintiff, Thomas Fleming, from the defendant, Virginia Discount Auto Sales, Inc. The action further sought the return of $1,800.00, which plaintiff claimed to have paid to the defendant and which plaintiff contended was the entire purchase price upon the vehicle. Rescission was claimed by Thomas Fleming upon the ground that he was an infant at the time the contract was entered into. From a judgment in the amount of $1,800.00 rendered in favor of Thomas Fleming against the defendant, Virginia Discount Auto Sales, Inc., the defendant has appealed to this court.

### Facts

The facts to be gleaned from the evidence introduced in this case are, to a large extent, not in conflict, the primary consideration being whether these facts justify a finding that the plaintiff perpetrated upon the defendant an intentional fraud such as to deprive the plaintiff, an infant at the time that he entered into the contract, of the right which he would otherwise have of rescinding the contract executed by him before reaching maturity. Those facts which are undisputed and as to which there is no conflict are substantially as follows.

On or about October 28, 1969, the plaintiff's brother, John Fleming, who was just 18 years old and still a student in high school, became interested in a 1967 used Chevelle automobile located upon the defen-

dant's sales premises. He attempted to enter into negotiations with the defendant for the purchase of this vehicle but was told by a representative of the defendant company that the vehicle would not be sold to him because of his immature age. The price of the vehicle was made known to him and he was told that if he, John Fleming, would return with someone of a proper age and with the financial ability to make a purchase, the defendant would be glad to do business with him.

Later, John returned with his older brother, Thomas, the plaintiff in this case, who was then twenty years old, and a salesman for the defendant company thereupon entered into negotiations with John and Thomas and quoted them the purchase price to be asked for the vehicle. (There is a conflict of testimony as to the purchase price stated to the defendant and his brother. They state they were told that the purchase price was $1,800.00 and that they would take $1,500.00 in cash plus a 1963 vehicle then owned by John and free of lien. The defendant, on the other hand, claims that the purchase price was stated to the boys as being $2,206.50.) Thereupon, John, Thomas and their father went to the Bank of Goochland and attempted to borrow $1,500.00 in cash, but when they described the vehicle to the bank, the representative of the bank refused to lend $1,500.00 but did agree to lend $1,300.00, the debt to be secured by the usual lien on the automobile. Plaintiff and his brother John and their father all three signed the note at the Bank of Goochland for $1,493.04, representing the loan of $1,300.00 plus interest, such note to be paid off in 24 monthly installments of $62.21 each, the first installment being payable on December 10, 1969. John and Thomas then scraped together $200.00 and returned to the defendant with the $1,300.00 represented by the bank loan, the $200.00 cash which they had been able to gather together and the title to John's 1963 vehicle. They were then given a receipt for the $1,500.00 cash. See plaintiff's exhibit No. 3, 6/5/72. The vehicle was then turned over to Thomas and his brother and was driven home by them.

The monthly payments to the Bank of Goochland were duly made as required during the following twenty-four months, and just after the last payment had been made, the car was repossessed by the defendant company. Plaintiff and his brother then went to the Bank of Goochland to request delivery of the title to them and discovered that there was marked on the title, in addition to the bank's lien which had now been satisfied, a lien in the amount of $468.00, this being the $406.50 differential between what the plaintiff contends to have been the purchase price of $2,206.50

and the $1,800.00 payment made by the plaintiff at the time of the purchase, plus $61.50 finance charges.

The papers made out in connection with this sale (plaintiff's exhibit P2 and defendant's exhibits D1 and D3) all show a stated purchase price of $2,206.50, showing the $1,800.00 only as a down-payment.

### Disputed Facts

The important evidence in this case is that which bears directly upon the issue of fraud and the evidence upon this issue is for the most part in direct conflict. The testimony as to the representations concerning the age of Thomas Fleming at the time the transaction was completed is, of course, of vital importance. Thomas Fleming and his brother both testify that at the time they went in together to discuss the purchase, the salesman refused to conduct the negotiations with John but agreed to enter into the contract with Thomas and that the salesman asked for Thomas's driving permit and was shown the permit by Thomas, such permit showing his age at the time to be 20 years, and Thomas further testifies that he was asked by the salesman his age and he told the salesman twenty years. William Warriner, II, salesman for defendant company, and Stanley Britt, Jr., the owner of defendant company, both testify that they had not asked to see Thomas's permit and they had been told by him that he was 21 years of age at the time.

Both John Fleming and Thomas Fleming testify that Warriner had told them the purchase price was $1,800.00, including the trade in of John's 1963 vehicle, while both Warriner and Britt state that he had been told the full purchase price, including the finance charges, was $2,268.00.

Both John and his brother Thomas testify that they were never contacted by any representative of the defendant company or anyone acting on their behalf regards any balance due on the purchase price of the car until the car was actually repossessed, while both J. Randolph Segar, Jr., and William Segar, partners in the finance company which purchased from the defendant the paper involved, testify that beginning in November, 1969, directly after the purchase transaction had taken place, they began making efforts to collect the monthly installments due upon the second chattel mortgage held by them but were unable to secure any payments from the plaintiff and that finally on February 5, 1971, well over a year after their lien had been placed upon the car and after the alleged demand had been made by them upon the plaintiff to start making his payments, they repossessed the vehicle.

As to the testimony concerning the transactions between the defendant and the plaintiff at the time the contract of sale was entered into, the court accepts the testimony of the plaintiff. The plaintiff was desperately anxious to buy the car and, from the evidence, it appears that the defendant was equally as anxious to sell the vehicle. While defendant's representatives emphatically state that they would never have considered dealing with an infant, yet the fact remains that they apparently had no hesitancy in accepting from John Fleming the assignment of his 1963 vehicle, which they took in trade, which was titled in his name at the time. It may well have been that the defendant company in its eagerness to conclude the sale, assumed from Thomas's physical appearance that he was an adult. Indeed, his appearance would indicate to a casual observer that he was far older than his actual age reflects. It may also well be true, as the defendant's representatives contend, that they *assumed* that since Thomas Fleming had been able to arrange a loan with the Bank of Goochland, he *must* have been over twenty-one years of age at the time. If, indeed, the defendant did not ask to see Thomas's permit or some evidence of his age, it would have been a very easy thing for them to have done so and a simple telephone call to the Bank of Goochland, upon whose judgment they appeared to be relying, would have informed them that the loan was not made alone on Thomas's signature but that his father was also a maker on the note. In any event, the court was impressed with the forthrightness and frankness of both Thomas Fleming and his younger brother. These men were both of limited education and gave the impression of being of a low degree of intelligence. While the younger brother was attending school, both of these men apparently earn their livelihood cutting firewood and selling it to customers in the city.

While the sale and security agreement, which was executed by Thomas Fleming, carried on its face a statement that the person executing the agreement was twenty-one years of age or older, the court is satisfied that Thomas Fleming was never cognizant of any such provision, and this is true regardless of whether he was given a copy of the contract, as defendant's representatives testify he was, or whether he was never given a copy, as he testifies.

Perhaps one of the most significant pieces of evidence is plaintiff's exhibit No. 2, which is the receipt given by the defendant to Thomas Fleming at the time the $1,500.00 cash was paid. It will be recalled that when the $1,500.00 cash was paid to the defendant along with the transfer of the title to the 1963 automobile then owned by John Fleming, the

receipt was given to Thomas Fleming. This receipt showed the figure of $1,500.00, which was the amount of cash actually paid. It is noted on this receipt that there are set up two columns for notations on the left-hand lower side of the receipt. These columns purport to show the status of the account between the defendant and the purchaser, any payments on the account, and in what manner the payments are made. The left-hand column has spaces for the amount of account, then underneath that the amount paid, then last underneath that a space for the balance due. There is a check mark opposite the amount of the account showing that it was a cash payment and, under the amount paid, there is a check mark showing that the cash was paid by check. The balance due column has no check mark opposite it, and upon the face of this receipt, it is most logical that the recipient thereof would believe, and indeed would be very justified in believing that since no amount was shown for the balance due, the $1,500.00 represented the entire account.

### Authority

The general rule, and that which is accepted and followed in Virginia, is that although ordinarily a contract entered into by an infant during his period of incapacity, unless affirmed by him after reaching his majority, is voidable at the option of the infant, the infant is estopped from taking advantage of this option where the contract in question had been brought about by a fraudulent representation by the infant that he was over the age of twenty-one at the time the contract was entered into. *Stallard v. Sutherland*, 131 Va. 316 (1921).

While this general statement is the majority and the better rule, there are, however, certain factual elements which must be present before an infant, who has misrepresented his age, will be held to have thereby forfeited, through equitable estoppel, his right to rescind a contract entered into during his infancy and to recover back consideration which he has advanced thereunder. These elements are set forth in considered detail with supporting authorities in a comprehensive note found in 29 A.L.R.3d beginning at page 1270. Even assuming a misrepresentation on the part of the plaintiff of his age, the following elements must exist before an equitable estoppel can be created against the infant: (1) the evidence must establish fraudulent intent upon the part of the infant to take advantage of the other contracting party by virtue of the misrepresentation made as to age; (2) the infant must, in fact, have received benefits under the contract which he is retaining while at the same time attempting to rescind the

contract; and (3) the contract must have resulted in detriment to the other contracting party.

In the case at bar, no one of these elements exists. In the first place, as stated above, the court is of the opinion that the evidence does not establish the fact that the plaintiff in this case misrepresented his age to the representative of the defendant company with whom he was dealing. But even had he so misrepresented his age, the evidence does not support the existence of any one of the three above elements necessary for the creation of an equitable estoppel. Even though the evidence had established such a misrepresentation, there is no evidence in the case from which it could be inferred that the plaintiff had done this with any intention of taking advantage of the other contracting party. Secondly, not only is there no evidence that the plaintiff (or his brother for whom he was acting) has received benefits under this contract which he is retaining, but on the contrary, the car having been repossessed, the plaintiff as well as his younger brother are in a position where they have been out of pocket the sum of $1,500.00 plus the loss to the younger brother of the perfectly good automobile which he traded in on the purchase of the car in question. Lastly, the defendant is now in possession of the repossessed car and, while it has unquestionably depreciated in value during the time that the plaintiff or his younger brother were in possession, nevertheless, the plaintiff has introduced no evidence as to the present value of the car and there is no conceivable basis upon which the court could determine what, if any, loss has been sustained by the defendant as a result of any depreciation which might have occurred. In addition to this, there is no evidence as to what disposition was made of the vehicle traded in by the plaintiff's younger brother as part of the purchase price, the resale of which by the defendant may well, and probably did, result in a substantial profit to the defendant.

Directly in point with the facts in the case at bar is the case of *Giddens* v. *D. S. Etheridge Co.*, 2 Tenn. App. 324. In this case, notwithstanding a fraudulent representation by a minor that he was over age on purchasing an automobile, he was allowed to recover the payments he had made, the court commenting that while such misrepresentations might well have been the basis for an estoppel against him, inasmuch as, in the case under consideration, the automobile had been repossessed by the seller and inasmuch as there was nothing in the evidence to show that the latter had sustained any material damage, no case for an estoppel was made out.

See also *International Land Co.* v. *Marshall*, 22 Okla. 693, 98 P. 951 (1908), and *Sonntag* v. *Heller*, 97 N.J.L. 462, 117 A. 638 (1922).

### Stallard v. Sutherland Distinguished

Inasmuch as *Stallard, supra*, which is the only Virginia case which has been cited to the court or which the court has been able to find directly on this point upheld a defense of equitable estoppel against an infant where a misrepresentation of age had been made, it should be pointed out that this case is entirely distinguishable from the instant case upon the facts. In *Stallard*, not only did the infant falsely represent himself to have attained his majority prior to his entrance into the contract in question, but he had been holding himself out to the community as an adult for some period of time in his business relations. In this case, the suit was brought by the infant plaintiff attempting to set aside a conveyance of real property which he had made to a trustee to secure a debt owed by his brother to a third party. The trustee subsequently, by authority of the deed of trust, sold the property to a bona fide purchaser for value. The evidence showed conclusively that the infant at the time of executing the deed had been long engaged in business for himself in his own name without the aid of either parent or guardian, that he was fully developed mentally and entirely competent and capable of transacting business for himself. The plaintiff did not deny that he had misrepresented his age at the time of the conveyance. The court in holding that an equitable estoppel existed under these facts stated:

> Here, the infant falsely represented himself to have attained his majority, his appearance confirmed it, and he was in fact holding himself out to the community by his conduct in attending to all his business transactions just as an adult would; and, in the transaction in question, the false statements of his brother and himself were made to induce the creditor to believe that he was of age and forego the collection of his debt by legal process.

The court, in approving the language of the English case *Watts* v. *Creswell*, 9 Vin. Abr. 415, states:

> If an infant is old and cunning enough to contrive and carry on a fraud, in a court of equity he should make satisfaction for it.

Contrary to the evidence in *Sutherland*, the evidence in the case at bar is that the plaintiff and his younger brother, as above-stated, are individuals of very limited education and not highly intelligent. The court further finds little evidence that either was guilty of any intentional fraud even if

the evidence were sufficient to establish a misrepresentation as to age, which the court does not find to be the case.

Fraud must be established by clear and convincing evidence. The evidence in this case falls far short of such degree of proof.

Judgment will accordingly be entered in favor of the plaintiff in the amount of $1,800.00.

The single question left unresolved is the proper assessment of costs for the copy of the stenographic transcript which was obtained by the plaintiff. Defendant contends that the plaintiff, having secured a copy of the transcript, although he did not order the original, should have to bear one half of the cost of the original plus one-half of the per diem cost for the court reporter. Had this matter come up before the court in the usual way, i.e., where the reporter refused, at the instance of the party engaging him: for services, to furnish the plaintiff a copy of the transcript, the court would have ordered that the copy be furnished but would have imposed the restriction that the plaintiff bear one half of the cost both for the per diem of the reporter and of the original copy. Rule 1:3. It is the court's feeling that it has the power to impose such restrictions even at this time and, accordingly, the plaintiff having secured his copy of the proceedings, it is ordered that he bear one half of the cost of the per diem charge by the reporter and of the original transcript in addition to whatever costs may have already been assessed against him for the copy which he obtained.